[Sac. No. 677. Department Two.—September 28, 1900.]

## JAMES WATERS et ux., Respondents, v. D. C. POOL, Appellant.

ACTION TO QUIET TITLE—VENUE—JURISDICTION—DISMISSAL.—An action to quiet title must be commenced in the county in which the land is situated, and if it is commenced in another county, the superior court thereof has no jurisdiction over the action, and it should be dismissed.

ID.—PLEADING—LOCATION OF LAND — DESCRIPTION—GOVERNMENT SUBDIVISIONS—PLAT—JUDICIAL NOTICE.—A complaint which describes the location of the land involved in such action by government subdivisions and upon a plat which is made part of the complaint, and which thus shows the land to be located in fact in another county, warrants the court in taking judicial notice of that fact, notwithstanding an averment in the complaint that the lands are situated in the county of the venue.

COUNTY BOUNDARY—RIVER—CHANGE OF COURSE AT BEND.—An artificial change in the course of a river, which is the established boundary between two counties, made at the neck of a peninsula created by a bend in the stream, whereby a new channel of the river is caused, and the former channel is ordinarily left without a current, cannot operate to change the legal boundary between the counties.

ID.—LEGAL CHANGE OF BOUNDARY—CHANGED LOCATION OF LAND.—Subsequent acts of the legislature expressly repealing the former acts establishing the boundary, and indicating an intent to define the boundary anew, and to make the changed course of the river the boundary between the two counties, have the legal effect to change the location of the land lying between the old and new channels of the river from one county to the other.

APPEAL from a judgment of the Superior Court of Yolo County. E. E. Gaddis, Judge.

The complaint averred that the lands are situated in Yolo county, and are particularly described as appears by the exhibit thereto attached, marked Exhibit "A," and made part of the complaint, which consisted of a plat and accompanying field notes showing that the land described was situated in the peninsula made by the bend in the former course of the Sacramento river, in the northwest quarter of section 19, township 11 north,

range 3 east, Mt. Diablo meridian, and contained twenty-seven and twenty-eight one-hundredths acres of land in said peninsula, which by the changed course of the river is left separate from the Yolo county side thereof. Further facts are stated in the opinion of the court.

Hudson Grant, for Appellant.

R. Clark, for Respondents.

THE COURT.—This action was brought in Yolo county to quiet title to a twenty-seven acre tract of land located near the Sacramento river. In the complaint the land was described as a certain part of the northwest quarter of section 19 in township 11 north, range 3 east, Mt. Diablo meridian. On the trial defendant (appellant here) objected to the taking of any testimony because it appeared from the complaint that the land in controversy was situated in Sutter county, "and the action was not commenced in Sutter county but in Yolo county." The objection was overruled and appellant excepted. The judgment was for plaintiff, and within sixty days after its entry Pool appealed to this court.

The objection made went to the jurisdiction of the court, and we think it should have been sustained and the case dismissed. From the description, by government subdivisions, given in the complaint, and the plat made part thereof, the court, we think, should have taken judicial cognizance that the land lay in Sutter county. (*Rogers v. Cady*, 104 Cal. 290.[1])

The question is one of statutory construction, and in the absence of any direct authority to guide us is not free from difficulty, as will be seen from the following statement:

In 1858 the Sacramento river was, by the previous acts of the legislature, the boundary between Yolo and Sutter counties, and the land in controversy was at that time unquestionably in Yolo county, it being on the Yolo side of the river as it then ran. (Stats. 1851, pp. 176, 179; Stats. 1857, p. 108.) It was situated, however, in a bend thereof and nearly surrounded by said river. In that year (1858) some beaver trappers made a small cut or canal across the neck of this bend on

---

[1] 43 Am. St. Rep. 100.

the Yolo side of the land in question and the waters running therein in a year or two washed such a channel that the river steamboats passed through that way; and since 1862 it has received the main volume of the river water, and "except in times of high water there is no current in the abandoned river bed."

It must be conceded, we think, from what appears in the record, that there was an actual change in the river so as to throw the land in question on the Sutter side of the running stream, at least as early as 1862. It is conceded, however, that this change in the river did not change the county boundary. (See *Missouri v. Kentucky*, 11 Wall. 395; *Nebraska v. Iowa*, 143 U. S. 359.) But it appears from the statutes of 1866, page 162, that the legislature in that year passed an act entitled, "An act to more clearly define and establish the boundary line of Yolo county," and in the same year another act was passed "more clearly to define the boundaries of Sacramento, Sutter and Placer counties." (Stats. 1866, p. 223.) Prior to this, in 1864, the legislature had passed another "act to define the boundary lines of the county of Sutter." (Stats. 1864, p. 301.) In all the statutes hereinabove referred to the boundary line between Yolo and Sutter counties is described as "the middle" of the Sacramento river.

The question presented for decision is, Was the boundary between the two counties changed from the middle of the old river to the middle of the new by the acts of 1866? The language of these acts seems to indicate an intention on the part of the legislature to make several changes therein and define anew the boundaries of the respective counties. Neither act is by its terms amendatory of any former act, but the second section of the statute defining the boundary of Yolo county (Stats. 1866, p. 162) reads as follows: "An act entitled an act to define the lines of Yolo county, and to establish its boundaries, approved March 26, 1857, is hereby repealed"; and the act defining the boundaries of Sutter county (Stats. 1866, p. 223) recites that "all acts and parts of acts, so far as they conflict with this act, are hereby repealed." We, therefore, must presume that the legislature used the language defining the

boundary advisedly, and intended to fix the middle of the Sacramento river, as said river ran at the date of the passage of the acts, as the boundary between the two counties.

There is no contention that sections 3926 and 3929 of the Political Code were intended to work any change in the disputed boundary as defined in the acts of 1866, nor is any question made as to the power of the legislature, under the constitution of the state as it existed prior to 1880, by enactment to change the boundaries of counties and establish new boundaries of counties as it saw fit.

For the foregoing reasons we think the land in dispute is in Sutter county, and that the superior court of Yolo county did not have jurisdiction of the cause. (Const. 1880, art. VI, sec. 5.)

The judgment is reversed.