## CROW v. ROANE.

### Opinion delivered May 4, 1908.

1. JUDICIAL NOTICE—COUNTY BOUNDARIES.—The courts take notice judicially of the location of county boundary lines. (Page 174.)

2. COUNTIES—BOUNDARIES.—Although in 1866 Red River made a sudden change by avulsion whereby certain lands which theretofore had been on the south side of the river were left on the north side, the act of December 22, 1874, creating Miller County and fixing Red River as the north boundary of the county, and the act of March 5, 1867, creating Little River County and fixing the same river as its south boundary, intended to fix the boundary between these two counties at the center of the channel of the river as it existed at the time of the passage of these acts. (Page 174.)

Appeal from Miller Circuit Court; *Jacob M. Carter,* Judge; affirmed.

*John N. Cook,* for appellant.

The court will take judicial notice of navigable streams, county boundaries, etc: 34 Ark. 224; 68 Ark. 462.

Where a river is the dividing line between two States or counties, a cutoff, even where the river makes a new channel, will not have the effect of giving the land to the State or county on whose side it is thrown by reason of the cut off. 196 U. S. 23, 49 L. Ed. 372; 143 U. S. 359, 36 L. Ed. 186; 6 L. R. A. (U. S.) 162.

The acts of 1827, creating Lafayette County, of 1867, creating Little River County, and of 1874, creating Miller County, are *in pari materia,* and the Legislature is presumed to have passed each with reference to the others. When Little River

County was formed, the land was in Lafayette County. That act, 1867, makes no mention of Lafayette County, but expressly detaches lands from Hempstead County. In speaking of Red River, the act meant the river as shown by United States surveys and maps, etc., and the act of 1874 therefore included the lands in litigation as within the boundaries of Miller County. Black on Interpretation of Laws, 204; 76 Ark. 303; Acts 1867, p. 218, § 1; Acts 1874, p. 65 , § 1.

*J. D. Conway,* for appellee.

The acts of 1827, 1828 and 1829, Laws of Ark. Terr., 1835, pp. 142, 144 and 150, defining the boundaries of Lafayette and Miller counties, make it clear that the Legislature had in mind the Red River as it ran at the date of the passage of these acts, and, the U. S. maps, survey, etc., referred to by appellant, not having been made until in 1840 and 1841, the claim that the acts of 1827, 1867 and 1874 are *in pari materia* falls. Red River is not the line between Miller and Little River counties, but the center of the main channel of Red River. 34 Ark. 244; 68 Ark. 462. In creating Little River County in 1867 and Miller County in 1874, the Legislature evidently had in mind the many changes in the river, and used the language defining the boundaries advisedly, and by the last act intended to fix the center of the main channel of the river as it ran at that date, as the boundary between the counties. 130 Cal. 136.

McCULLOCH, J. Appellant instituted against appellee in the circuit court of Miller County a statutory action of unlawful detainer, the subject-matter of the action being certain land alleged to be situated in Miller County. Appellant filed a supplemental pleading, which is treated as an amendment to the complaint, alleging that prior to the year 1866 the lands were situated south of Red River according to the map of the Government survey, and that during said year the river made a sudden change by cutoff or avulsion whereby the said lands were left on the north side of the river, and that such continues to be the situation thereof to this day.

Appellee filed a special plea to the jurisdiction of the court, which was sustained, and the action was dismissed.

The court takes notice judicially of the location of county boundary lines. *Cox* v. *State,* 68 Ark. 462.

We know by the act of December 22, 1874, creating Miller County, the Legislature fixed the north boundary of the county at the center of the main channel of Red River. The present channel of the river remains the same now as it was in 1874, and the lands in controversy are situated now, as then, north of the channel of the river. They are therefore situated in Little River County, and the circuit court of Miller County had no jurisdiction over them as the subject-matter of the action.

The Legislature, by an act passed March 5, 1867, created Little River County, and fixed the south boundary thereof at the south bank of Red River. This was after the lands in controversy were changed from the south to the north side of the channel of the river.

The Legislature, as we have already shown, passed the act of December 22, 1874, creating Miller County and fixing the north boundary thereof at the center of the main channel of that river. The effect of this last legislation was to change the south boundary line of Little River County from the south bank of Red River to the center of the main channel of the river, thus fixing that as the boundary line between Miller and Little River counties.

Now, it is argued by learned counsel for appellant that the lawmakers, in fixing the channel of Red River as the boundary line between these counties, are presumed to have had reference to the channel as it existed when former statutes, both territorial and State, were passed constituting it as county boundary lines before the channel was changed in 1866; but we are of the opinion that such a presumption cannot be indulged in the face of this change in the channel of the stream which brought about changed conditions with respect to the lands effected by the change. The change itself of the channel of the stream affords the strongest reasons why the Legislature should have deemed it expedient to fix the new boundaries according to the changed position of the channel and the lands effected thereby. If the Legislature considered local conditions at all, and we ought to presume that such considerations were given weight, the fact that when Miller County was created these lands were situated on

the north or Little River side of the Red River affords the most convincing reasons for fixing the boundary so as to place them in that county. That, too, is in accordance with the plain language of the statute.

The case of *Waters* v. *Pool,* 130 Cal. 136, is quite similar to this, and is instructive. There the channel of the Sacramento River constituted the boundary line between two counties, and the land in question was situated on a peninsular formed by a bend in the river. A cutoff across the neck of this land changed the channel so as to place the peninsular lands on the opposite side of the channel, and the Legislature passed an act to clearly define the boundary between these two counties and referred to the channel of the river as the boundary, without specifying whether the reference was to the old or to the new channel. The court said: "We, therefore, must presume that the Legislature used the language defining the boundary advisedly, and intended to fix the middle of the Sacramento River, as said river ran at the date of the passage of the act, as the boundary between the two counties."

For the same reasons we are convinced that the Legislature meant to fix the boundary line between Miller and Little River counties at the center of the channel of Red River as it existed at the time of the passage of the statute.

Affirmed.