## McCALL *v*. NORTH PINE BLUFF REALTY CO.

### Opinion delivered October 23, 1916.

1. PLEADING AND PRACTICE—DEMURRER—AMENDMENT TO COMPLAINT. Where a demurrer was filed to a complaint, and before the same was passed upon, the plaintiff filed an amended complaint, the filing of the amendment will constitute a confession of the inadequacy of the original complaint, and will dispose of the demurrer so far as it concerns the original complaint, and it becomes the duty of the defendant to then plead to the complaint as amended either by demurrer or answer.

2. PLEADING AND PRACTICE—FILING ANSWER—TIME—DISCRETION OF TRIAL JUDGE.—Under the facts as set out above, it is within the discretion of the trial judge to refuse to permit the filing of an answer after the lapse of the proper time for filing the same.

3. PLEADING AND PRACTICE—COMPLAINT—DESCRIPTION. OF LAND—VARIANCE.—In an action to obtain possession of certain lands, the lands were described as in the "Spanish Survey," and in a certain "Private Survey." *Held* this was merely a clerical misprision, and would not be sufficient to disturb a default judgment, rendered in favor of the plaintiff.

4. JUDICIAL NOTICE—SHIFTING CHANNEL OF THE ARKANSAS RIVER.—This court will take judicial notice of the shifting channel of the Arkansas River, but not of the extent of the encroachments of the river upon adjoining lands.

Appeal from Jefferson Circuit Court; *W. B. Sorrells*, Judge; affirmed.

*R. L. Floyd* and *J. P. Kerby*, for appellant.

1.   The default judgment was erroneous as there were undisposed of issues before the court. The answer was in the custody of the clerk and the court refused to allow it to be filed. 23 Cyc. 750, 751; 17 Ark. 454.

2.   The default judgment was erroneous; the complaint fails to set up a cause of action. 58 Ark. 39, 43. The complaint does not allege that the possession of its grantors was either actual or exclusive. Adverse pos-

session must be "actual, open, continuous, hostile, exclusive, etc." 43 Ark. 486.

3. The description of the lands is not legally sufficient. Courts take judicial notice of accretions and erosions of land. 9 Wheat. 374; 7 Peters, 342; 34 Ark. 224; 53 *Id.* 48; 68 *Id.* 462; 86 *Id.* 172; 89 *Id.* 568; 90 *Id.* 599; 93 *Id.* 604. For cases of judicial cognizance, see 106 Cal. 257; 116 *Id.* 397; 58 Am. St. 183; 46 Am. St. R. 237, 242.

*M. Danaher* and *Palmer Danaher*, for appellee.

1. The filing of the amendment to the complaint was a confession that the demurrer was well taken. The answer did not reach the clerk in time for filing. 66 Ark. 312.

2. The answer set up no defense. 102 Ark. 433; 99 *Id.* 404. It was a mere general denial. 52 Ark. 298; 43 *Id.* 296; 73 *Id.* 225; 74 *Id.* 417.

3. Defendant was a mere squatter without any right or title whatever. The answer set up no defense. 74 Ark. 417; 99 *Id.* 404; 102 *Id.* 433.

4. The complaint is sufficient. 80 Ark. 181; 90 *Id.* 84; 74 S. W. 199. Any defect was cured by the answer. 77 Ark. 1; 67 *Id.* 444.

McCulloch, C. J. This is an appeal from a judgment by default in an action to recover possession of certain land. Appellee (plaintiff below) alleged in its original complaint that he was the owner of a large tract of land, describing it, known as Boyd's plantation, situated across the river from the city of Pine Bluff, and that appellant was wrongfully in possession of a portion of it, which is described in the complaint and alleged to contain 40 acres. Appellee did not, in the complaint, deraign title back to the United States government, but began his chain of title with a commissioner's deed executed in the year 1903.

The action was commenced on May 31, 1915, and on June 4 appellant appeared and filed a demurrer on the ground that the complaint did not show on its face

that plaintiff had title to the land in controversy, nor that the lands in controversy are included in the lands to which the plaintiff claims title. No action was taken by the court on the demurrer, but on June 7, 1915, appellee filed an amendment to the complaint. The complaint, as thus amended, still failed to deraign title back to the government, but it alleged a patent by the United States to James Scull in 1828, and then begun appellee's chain of title from a deed from Culpepper to Johnson executed in January, 1892. The amendment also contains an allegation that appellee and its grantors had been in open, notorious, adverse possession from the year 1892 down to July, 1914, when appellant wrongfully took possession of the 40 acres in controversy.

(1) On October 22, 1915, the court entered a judgment by default in favor of appellee and ordered a writ of possession. The judgment entry concludes with a recital that the defendant tendered an answer which had been mailed to the clerk of the court on September 21, 1915, but that the court refused to allow it to be filed. It is contended that the court abused its discretion in refusing to allow the answer to be filed, and in rendering judgment notwithstanding appellant's tender of his answer. The court did not expressly rule on the demurrer, but the filing of the amendment to the complaint constituted a confession of the insufficiency of the original complaint, and thus disposed of the demurrer so far as concerned the original complaint. The question then was whether or not the complaint as amended was sufficient, and it was the duty of appellant to plead to the amended complaint either by demurrer or answer. When the court reconvened at the October term, the court declined to allow to be filed the answer which the record recites had been mailed to the clerk in vacation and rendered judgment by default.

(2) We can not say that the court abused its discretion in refusing to permit the answer to be filed at that time. Appellant had to take notice of the fact that an amendment to the complaint had been filed,

so as to perfect the statement of appellee's cause of action, and the duty rested upon him then to plead to the amended complaint or to show cause for extension of the time. The answer was not filed within time, and it was a matter of discretion with the court whether it would allow the answer filed out of time. No excuse is shown in the record for the delay.

(3) It is further insisted that the judgment is erroneous for the reason that the allegations of the complaint are still insufficient. In the first place, the point is made that the statement in the complaint describing the land owned by the plaintiff describes it as "all of the Spanish survey No. 2426 (and other lands)," whereas, the allegation concerning the particular portion of the land of which appellant is alleged to be in possession describes the land as a part of "private survey No. 2426." The contention is, therefore, that the land of which appellant is alleged to be in possession is not part of the lands owned by appellee according to the description in the complaint. This was, we think, an obvious misprision and not important, for it is plain that the descriptive words "Spanish Survey No. 2426," and "private survey No. 2426" were used as meaning the same thing.

(4) There is also the contention that the court, in testing the sufficiency of the complaint, should take judicial notice of the extent of the encroachments of the Arkansas River upon the body of land owned by appellee, and it is stated here to be a fact that the land charged to be in possession of the defendant has in fact been washed away by such encroachments and that we should take judicial knowledge of this fact. We held in *Little* v. *Williams*, 88 Ark. 37, that "the courts take judicial cognizance of the general system of government surveys, and that lands are surveyed and platted into sections and parts of sections and into fractional sections where they abut on streams or other bodies of water." It has also been held that we should take judicial cognizance of the natural boundaries of counties and of municipalities. *Cox* v. *State*, 68 Ark.

462; *Crow* v. *Roane*, 86 Ark. 172; *McKenzie* v. *Newton*, 89 Ark. 564.

We may also take judicial notice, as is so forcibly argued by counsel, of the shifting of the channel of the Arknasas River, but it is quite another thing to say that we ought to take notice of the extent of the encroachments of the river upon adjoining lands, so as to determine, without the aid of extrinsic evidence, how far such encroachments have cut away particular tracts of land. That must necessarily be left to the proof adduced in each case, and is not a matter of which we can take judicial cognizance. In other words, we take notice of the fact that the river frequently changes its course and washes away land on one side, and forms accretions on the other. We might also take notice of a great convulsion whereby the channel of the river broke through and left certain natural objects on one side which theretofore had been located on the other side of the channel of the river. But, as before stated, it is necessarily a matter of proof to determine to what extent accretions have been formed. We have never had called to our attention a case where a court took judicial knowledge of the extent of accretions or erosions.

The complaint was therefore sufficient on its face to warrant the default judgment.

Affirmed.