OVERTON, J.
 

 A dispute arose between the parishes of Caddo and Bossier with respect to the correct boundary between them in sections 9, 15, 16, and 21, the territory in dispute being Shreve Island. Because of this dispute, surveyors were appointed, pursuant to the provisions of section 2624 et seq. of the Revised Statutes, to ascertain the correct boundary line. The surveyors proceeded to discharge their duties. H. L. Mitchell, the surveyor for Caddo parish,-found the boundary at the point in dispute to be Red river as that river presently runs. This placed Shreve Island in the parish of Caddo. Witbeck, the surveyor for Bossier parish, found the boundary at the point in controversy to be what is now known as Old river, which, until some time in 1835, was the bed of Red river. This finding placed Shreve Island in the parish of Bossier. Both surveyors filed their returns, and, since they failed to agree, the present suit to establish the boundary line, at that point, between the two parishes, was instituted.
 

 In 1835, Red river, at the point in controversy, made almost a complete loop. In that year Captain Henry M. Shreve, a civil engineer, was engaged in removing the great raft, which obstructed a considerable section of the river, including that part of the river in the locality in question. An account of this raft is given in State v. Bozeman, 156 La. 635, 644, 101 So. 4. While thus engaged, Captain Shreve conceived the idea of cutting a canal across the neck of land formed by the almost complete loop, mentioned above. The cutting of the canal required an excavation of approximately 261 yards in length, 8 yards wide, except in a low flat bottom at the lower end, where an excavation 100 feet wide was required. The canal was dug 9 feet deep throughout, was finished on April 2,1835, and water was permitted to run through it on May 13, 1835. It appears from the report of Captain Shreve, made to the chief of engineers, at Washington, from which the foregoing facts are taken, that, on May 16, 1835, three keel boats passed through the canal, and that ten days later two steamboats passed through it. At the time of the passage of the steamboats the canal was upwards of 200 feet wide and 30 feet deep, this being approximately the width and depth of the channel of the river. From that time to the present Red river has run through the canal. What was the canal is now the continuation of Red river, and has been since 1835. What was Red river in that locality prior to April, 1835, is now commonly referred to as Old river,'and, when the canal was dug, was not in a condition to be navigated, due to the presence there of a part of the great raft, which condition, we take it, existed when the parishes of Caddo and Bossier were created. The effect of digging the canal was not only to change the course of Red river at that point, but was to shorten it approximately 8 miles, and to make the body of land, which lay in the bend of the-river, as it formerly flowed, an island, known as Shreve Island. It is over this island that the controversy here has arisen, the parish of Caddo claiming the right to exercise jurisdiction over it and the parish of Bossier claiming the same right.
 

 
 *381
 
 We insert at this point a plat, which may serve to give a better idea of the situation.
 

 When the canal was dug in 1835, neither the parishes of Caddo nor Bossier had been created. What is now Shreve Island was in the parish of Claiborne; Red river, as it then ran, or what is now referred to as Old river, being at that time the western boundary of that part of Claiborne parish. Act 42 of 1828. The island, of course, remained a part of Claiborne parish until it was made a part of another parish by legislative act.
 

 The parish of Caddo was created by Act of January 18,1838, No. 15, p. 11, nearly three years after the course of Red river had been changed. Section 1 of that act defines the boundaries of the new parish, and reads as follows:
 

 “That all that territory within the following boundaries, to wit: Beginning on the southwest side of Red river, where the township line be; tween townships twelve (12) and thirteen (13) strikes the same due west, to the southwest bank of Bayou Pierre Lake; thence up said lake up to the mouth of the Bayou La Bonne Chasse; thence up said bayou to the most western part of Messrs. Bouduge and Yascocu’s plantations; thence by a due south line until it intersects a direct line running from said western bank of Bayou Pierre lake to the Sabine river, where the line between townships nine and ten strikes the same;
 
 thence pursuing the boundary line of the United States to Red river and down the same to the point of beginning,
 
 to form and constitute a new parish, to be called the parish of Caddo.” (Italics ours.)
 

 Defendant relies on four sections in this act as tending to show that the parish of Caddo was created entirely out of a part of the parish of Natchitoches, and hence did not include Shreve Island, which was then in the parish of Claiborne. These sections read as follows:
 

 “Section 8. Be it further enacted, etc., that the parish of Caddo shall remain united with the parish of Natchitoches in elections for all state and federal officers, and the parish judge and commissioners of elections shall, immediately after the polls are dosed, transmit a certified statement of the vote of the parish of Caddo to the parish judge of Natchitoches, who shall receive and count the same as a part of the vote of the latter parish.
 

 “Section 9. Be it further enacted, etc., that the parish of Caddo shall receive no portion of the land credits or other property belonging to the parish of Natchitoches.
 

 “Section 11. Be it further enacted, etc., that the parish judge of Natchitoches shall forthwith furnish to the state treasurer a list of the names of all electors embraced within the limits specified in the first section of this act; and the state treasurer, before paying to the directors of the parish schools of Natchitoches, shall deduct two and five-eighths dollars for each elector included in the aforesaid list, which shall be paid over, on the warrant of the president of the police jury of the parish of Caddo, for the use of schools therein.
 

 “Section 12. And be it further enacted, etc., that the sheriff of the parish of Caddo, shall collect the state taxes against the citizens residing within the limits of the new parish, and to enable him to do so, the sheriff of Natchi
 
 *383
 
 todies shall furnish him with a certified list of the names of such persons in the new parish as may have been assessed, together with the amount of tax standing against them, which taxes, as fast as collected, shall be paid over by the sheriff of Caddo to the state treasurer.”
 

 The parish of Bossier was created five years after the creation of the parish of Cad-do by Act 33 of 1843. The first section of the act defines the boundaries of the new parish, and reads as follows:
 

 “That all that portion or tract of country in the Parish of Claiborne bordering on Red river and bounded as follows, to wit:
 

 “Starting at the mouth of Logy bayou on the western bank of said bayou, thence following the shore of said bayou to Lake Bestineau, thence up along the shore of said lake to Bayou Dorcheat, thence up along the shore of said bayou to the line between the state of Arkansas and Louisiana,
 
 thence west on said line to the eastern hanlc of Red river, thence down along said river,
 
 to the point of starting, shall form a separate Parish, to be called the parish of Bossier.” (Italics ours.)
 

 From the foregoing it would see'm that a correct solution of the problem submitted to us may be obtained by ascertaining what the Legislature meant by the term “Red river” in defining the boundaries of Caddo and Bossier parishes. If the Legislature meant by that term Red river as it flowed at the time these boundaries were defined, then it would seem that the territory in controversy is in the parish of Caddo. If, upon the other hand, the Legislature meant by that term the original channel of Red river, or what is now referred to as Old river, then the territory in controversy is in the parish of Bossier.
 

 Ordinarily, when the course of- a river has been changed by natural or artificial means, the Legislature thereafter, in designating the river as a boundary, is presumed to refer to the river as it ran at the time it was made a boundary. Thus, in Waters v. Pool, 130 Cal. 136, 62 P. 385, it appeared that in 1S58 the Sacramento river was, by previous acts of the Legislature, the boundary between Yolo and Sutter counties, and that the land in controversy was at that time on the Yolo side of the river, as it then ran, situated in a bend of the river, which nearly surrounded it by water. In that year (1858) some beaver trappers dug a small canal across the neck of this land, which in the course" of a year or two so increased in size and depth that boats used it in navigating the stream. It also appeared that the canal had received, from the time it had so washed, the main volume of the river water, the current being in the new channel alone, except in high water. The court found that there had been such a change in the river as to throw the land on the Sutter county side thereof. Thereafter, in 1866, the Legislature passed acts to define more clearly the boundaries of Yolo and other counties. In these acts the boundary between Yolo and Sutter counties was designated as the Sacramento river, and it was held that the Legislature meant the Sacramento river as it then ran, and not as it ran prior to 1858.
 

 Another case very similar to the foregoing is Crow v. Roane, 86 Ark. 172, 110 S. W. 801. In that case it appeared that certain lands were situated, in 1866, south of Red river, but during that year the river made a sudden change, which left the land on the north side of the river. In 1867, after this change had occurred, the Legislature created Little River county, and fixed the southern boundary thereof at the center of the main channel of the river. In that case it was held, to quote from the syllabus, which correctly reflects the ruling made, that:
 

 “It would not be presumed that the Legislature in fixing the channel as a boundary line between the counties had reference to the channel as 'it existed when former statutes, both territorial and state, were passed constituting it as a county boundary line before it was changed in 1866 but that they referred to the channel as it existed when the Act of 1874 was passed, and that therefore the lands were situated in Little River county.”
 

 Our conclusion is that the Legislature in designating Red river as one of the
 
 *385
 
 boundaries of Caddo parish, and also, of Bossier parish, meant Red river as it then ran, and not its original channel, or what is now known in that vicinity as Old river. This view, we think? is not weakened by the fact that Shreve Island was in the parish of Claiborne when the course of the river was changed, the old course being then a part of the western boundary of Claiborne parish, and by the fact that the Legislature, in creating the parish of Bossier in 1843, expressly said that it was creating it out of a part of Claiborne parish, with Red river as one of its boundaries, meaning its western boundary. The argument that the Legislature by so declaring showed its intention to make Red river, as it originally ran, the western boundary of that part of Bossier parish, thereby disclosing its intention to include Shreve Island in that parish would have great weight, were it not for the fact that the parish of Caddo was the first created. Logically, however, this declaration is of no value in deciding the question, for if the Legislature, in creating the parish of Caddo, in 1838, intended Red river, as it then ran, to be the eastern boundary of Cad-do, it took Shreve Island out of Claiborne parish and made it a part of Caddo. Therefore, five years later, the Legislature, in creating Bossier parish, could very correctly say that it was creating it out of a part of Claiborne parish, with Red river, meaning Red river as it then ran, as the eastern boundary of the parish, thus leaving Shreve Island in Caddo parish. There was no reason, when the parish of Caddo was created, why the Legislature could not create it out of parts of two parishes. The Constitution, then in force, that of .1812, left the Legislature full power .in that respect.
 

 Nor do we think that the Legislature showed an intention to create the parish of Caddo entirely out of the parish of Natchitoches, and thereby make the old channel of the river a part of the eastern boundary of Caddo parish instead of the new channel, because it provided, in creating Caddo parish, that Caddo should remain united with Natchitoches parish in elections for state and' federal officers, as appears from section 8 of the act, quoted supra. Nor do we think that the Legislature showed such intention, when it made it the duty of the sheriff of Natchitoches to furnish the sheriff of Caddo with a list of the names of such persons who were assessed in the former parish, together with a list of the taxes standing against them, to the end that the sheriff of Caddo might collect these taxes and pay them to the state treasurer, without making a similar provision with reference to Claiborne parish, because of Shreve Island, as appears from section 12 of the act, quoted supra. We do not so think, because, if we are correct, Caddo parish was created almost entirely out of a part of Natchitoches parish. Hence, naturally, if Caddo was to remain united with any parish in elections for state and federal officers, it would be with the parish of Natchitoches, and doubtless political reasons dictated that it should not be united with the parish of Claiborne also. As to the rest, Shreve Island is a comparatively small piece of territory. The Legislature could hardly be expected to notice it in making provision for the collection óf taxes, already assessed, by requiring the sheriff of Claiborne to send to the sheriff of Caddo a list similar to that required of the sheriff of Natchitoches. Probably there were only two or three then assessed for taxes on property in the island. The entire island, it may be said, is now owned by one person. There is nothing in sections 10 and 11 of the act, quoted supra, that affects the result.
 

 Before closing it may be said that the parish of Bossier, so far as could be ascertained, which was from 1880, at no time attempted to collect taxes on the island until the year 1925, and it . was this attempt that brought
 
 *387
 
 about the present litigation. The Caddo levee district, which includes lands only in the parish of Caddo (Act 74 of 1892; Act 160 of 1900), has exercised jurisdiction over these lands since 1892, and the school board of Cad-do parish has levied taxes in the island, which is a part of school district No. 1 of Caddo parish, for some time. In short, so far as appears the governmental authorities have very generally recognized and treated the island as a part of Caddo parish. On the other hand the parish of Bossier points to only one or two isolated instances, which have any possible tendency to show that*the territory was-considered to be in its jurisdiction. Based on the foregoing facts, the parish of Caddo urges that the parish of Bossier cannot question at this late day that the island is in Caddo parish. We find it, however, unnecessary to consider the plea.
 

 The trial court rendered judgment for the parish of Caddo. The decree, however, is somewhat broadly worded, and for that reason may possibly cause trouble in the future. We are asked, therefore, should we reach the conclusion we have, to recast the decree. This we shall do. In doing so, we may say that we think that the survey of H. L. Mitchell, with the plat attached to the' procSs verbal thereof, is correct. Plaintiff: prays for judgment in accordance with that survey and plat.
 

 Eor the reasons assigned, the judgment appealed from is set aside for the purpose of recasting it, and judgment is now rendered in favor of plaintiff: and against defendant, declaring and recognizing the boundary line between the parishes of Caddo and Bossier, in the vicinity of Shreve Island, to be the middle of the channel of Red river, as said river ran in 1838, and as it still runs, thus placing Shreve Island in- the parish of Caddo, as shown by the procés verbal of the survey and plat attached thereto made by H. L. Mitchell, surveyor.- It is further ordered that the parish of Bossier pay the costs of this suit.