ASHTON *v.* ASHTON.

4-4284

Opinion delivered May 25, 1936.

*Barber & Henry* and *Troy W. Lewis,* for appellant, *Rita L. Callaway,* for appellee.

BUTLER, J. The appeal in this case is from the decree of the court below awarding the appellee a divorce from the appellant.

Appellee filed his suit in the Pulaski Chancery Court on May 15, 1935, alleging that he was, and had been for more than two months prior to its institution, a *bona fide* resident of Pulaski county and State of Arkansas. After reciting the marriage of himself and the appellant in Michigan on April 5, 1909, appellee alleged that on or about July 25, 1920, appellant, without reasonable cause, wilfully deserted him, and that they have continuously remained apart since that date. For a second ground, appellee alleged unkind, cruel, harsh and tyrannical treatment.

To this complaint appellant filed a special plea challenging the jurisdiction of the court on the ground that appellee was not a *bona fide* resident of the State, and that his presence in Arkansas was for the fraudulent purpose of defeating the legal rights of appellant. This plea was overruled by the trial court, and other pleadings were filed by the appellant which finally culminated in an amended answer interposing the plea of *res judicata,* and containing general denials of the allegations of appellee's complaint. Thereafter, by leave of court, appellee amended his complaint so as to charge desertion as the sole ground for divorce.

In support of the alleged ground, appellee testified in his own behalf introducing the depositions of several other witnesses. The testimony of appellee related to the alleged desertion of the appellant in 1920 and the circum-

stances thereof. The testimony of the other witnesses also related to that occurrence. This testimony was controverted by that of the appellant. In support of the plea of *res judicata* appellant introduced, without objection, certified copies of records or proceedings in the courts of the States of Illinois, Colorado and Nevada. From these the following facts appear. Willard H. Ashton, appellee, and Cora B. Ashton, appellant, were married on April 10, 1909. Soon thereafter they established their residence in the home of appellee at Rockford, Illinois, and were residing there in July, 1920. Some time after this date, Mrs. Ashton brought suit in the circuit court of Winnebago county, Illinois, against Willard H. Ashton alleging that defendant had wilfully and without probable cause deserted her, and she prayed for separate maintenance under the provisions of a statute of that State. Revised Statutes, ch. 68, § 22. The defendant entered his appearance and answered denying the allegations and alleging that Mrs. Ashton had wilfully deserted him on or about July 17, 1920, and prayed that the complaint be dismissed. The case was duly tried and among other things the court found and decreed "that the allegations in the said bill of complaint contained, are true as therein stated; that the said Willard H. Ashton, defendant, has been guilty of wilful desertion as charged in said bill of complaint, and that the said complainant is now living separate and apart from the said defendant without any fault, cause or misconduct on her part; that on or about the 17th day of July, 1920, the said Willard H. Ashton wilfully abandoned and deserted the said Cora B. Ashton without excuse, provocation or reason, and that he, the said. Willard H. Ashton, has since said date continued to absent himself from the said complainant, and his home in the city of Rockford, Winnebago county, Illinois." It was further adjudged that Mrs. Ashton be paid $75 per week as separate maintenance until further orders of the court.

In 1927, Mr. Ashton filed suit against his wife in Larimer county, Colorado, alleging that he was a citizen and resident of that State, and praying for a divorce on the ground that his wife had been guilty of extreme and

repeated acts of cruelty toward him. Mrs. Ashton defended by general denial, and the issues were presented to a jury which found in her favor. The court ordered that Ashton pay his wife $75 per week "as heretofore." Thereafter Ashton returned to Illinois, and there sought a modification of the decree of the Illinois court. The court, on the showing made, reduced the payments to the sum of $60 per week. Ashton next appears in the courts of Colorado as plaintiff in a proceeding against his wife, and the sheriff of Larimer county seeking a modification of the decree relating to the temporary alimony awarded by the court in his previous action for divorce. In 1931, he appears in a court in Clark county, Nevada, alleging that he is a resident and citizen of that State, and praying for a divorce from his wife. This proceeding was a long drawn-out affair, numerous pleadings being filed and orders made by the court. It finally went to trial on December 5, 1932, when the issues were submitted to a jury, resulting in a verdict and judgment denying the prayer of Ashton's complaint. Thereafter, this judgment was set aside, and a decree was entered in favor of Ashton granting the divorce as prayed. Upon motion of Mrs. Ashton this decree was vacated, the court finding "that there was irregularity in the proceedings of the court by which the defendant was prevented from having a fair trial, and further that error in law occurred at the trial, and that there was irregularity in the order of the court in sustaining plaintiff's demurrers to defendant's affirmative defenses in said action by which the defendant was prevented from having a fair trial." This order was made on July 23, 1934.

In this state of the record, and without proceeding further in the Nevada court, Ashton, on May 13, 1935, filed his complaint in the Pulaski Chancery Court, and on June 24, 1935, filed a motion in the Nevada court for the dismissal of the action there pending, on the ground that he had moved his citizenship to Arkansas. This motion was overruled, and the cause is now pending in the Nevada court.

It is the contention of the appellee that the orders of the courts of Illinois, Colorado and Nevada, hereinbe-

fore mentioned, were inadmissible for the reason that all the pleadings and proceedings on which the judgments and orders were based were not authenticated and produced so as to show that the courts were authorized to render the judgments upon which the appellee rests her plea of *res judicata*. This contention is made on the familiar rule that "to maintain an action on a judgment against a plea of *nul tiel* record, a certified copy of the judgment alone is not sufficient, but all the pleadings and proceedings on which the judgment is founded, and to which as a matter of record it necessarily refers, must be produced." *Hallum* v. *Dickinson*, 47 Ark. 120, 14 S. W. 477; *Hall* v. *Roulston*, 70 Ark. 343, 68 S. W. 24; *Swing* v. *St. Louis Refrigerator & Wooden Gutter Co.*, 78 Ark. 246, 93 S. W. 978, 115 Am. St. Rep. 38; *McCarthy* v. *Troll*, 90 Ark. 199, 118 S. W. 416. A sufficient answer to this contention is that the orders and decrees were introduced without objection, and there was no plea of *nul tiel* record.

It is next insisted by appellee that the plea cannot be sustained as to the judgment rendered by the Illinois court in 1921, because, he says, that decree was set aside and vacated. In this appellee errs. On June 25, 1935, during the pendency of the instant case, Mrs. Ashton filed her petition in the Illinois court for a citation requiring the appellee to appear and show cause why he should not be adjudged guilty of contempt of court on his failure to pay $11,428 due her under the decree rendered in her favor on March 23, 1931. Very opportunely for Mr. Ashton, the Legislature of the State of Illinois, by its act filed July 20, 1935, amended the statute upon which Mrs. Ashton's proceeding for separate maintenance was based. This act in part provides: "That where there are no living children born of such marriage, no person having once received separate maintenance or temporary alimony for a period of two (2) years or a fraction thereof shall be entitled to further separate maintenance or temporary alimony against the same spouse, except for such portion of the two (2) years as remains unexpired." The court found in effect that Ashton was protected by the act quoted and denied the petition of Mrs. Ashton, and

decreed: "that he shall go hence without any other or further liability to the plaintiff herein under any decree or orders heretofore entered herein, and that his property, either real or personal, and wheresoever situated, is freed from any liability or lien which has or might have caused such property to be subjected to the payment of any moneys which have or might have accrued under any decree or order heretofore entered herein." The only effect of this order was to free Ashton from payment of further sums for separate maintenance, but it did not nullify the finding upon which the decree of March 23, 1931, was based, namely, "that the said Willard H. Ashton, defendant, has been guilty of wilful desertion as charged in said bill of complaint, and that the said complainant is now living separate and apart from the said defendant without any fault, cause or misconduct on her part."

On the appellant's plea of *res judicata,* the question is: Was the decree in her favor for separate maintenance, entered in the Illinois case, conclusive upon appellee in a divorce proceeding in this State on the issue of wilful desertion? That issue, present in the instant action for divorce, was identical with the issue of absence without fault involved in the Illinois maintenance suit. The desertion charged in this proceeding is said to have occurred and continued on and after the date identical in the proceeding for maintenance in the Illinois court, and the evidence adduced by the appellant in this case related solely to matters antecedent and contemporaneous with the date on which the desertion is alleged to have occurred in the Illinois case. The question in both cases therefore was whether the separation and subsequent living apart was by reason of the fault of the wife. It is clear that the issues raised and determined in the Illinois case are identical with those in the case at bar. The judgment of the Illinois court is, therefore, a complete bar to the maintenance of the instant case, and the trial court should have so held.

The case of *Harding* v. *Harding,* 198 U. S. 317, 49 L. Ed. 1066, 25 S. Ct. 679, is directly in point and is conclusive of the decision we have reached. There

a husband sued his wife in a court in the State of California for divorce on the ground of desertion. In bar of that action the wife pleaded a judgment of the courts of Illinois wherein it was adjudged, in a proceeding under the laws of that State (being the same statute heretofore cited) brought by the wife for separate maintenance, that she was entitled to separate maintenance, and in the decree it was recited, among other things, that the court "doth find that the said complainant, at the time of the commencement of this suit, was living, and ever since that time has lived, and is now living, separate and apart from her husband, the said defendant, without her fault, and that the equities of this cause are with the complainant." The courts of California denied the plea and on the evidence found that the husband was entitled to a divorce and decreed accordingly. The Supreme Court of the United States, in reversing the case and holding that the plea of *res judicata* ought to have been sustained, took occasion to notice that to maintain her cause of action in the courts of Illinois, it was necessary for the wife to show that she was living apart from her husband without fault on her part and for good cause, and that the sustaining of her right to separate maintenance, based on the establishment of want of fault upon her part, was a judicial finding by the court. The Supreme Court concluded that the decree of the Illinois court and the evidence sustaining it were identical in effect with the cause of action alleged in the California courts and that the decree of the former court conclusively operated to prevent the same separation from constituting a wilful desertion of the husband by the wife. In conclusion, the court said: "From these conclusions it necessarily follows that the issue presented in this action for divorce was identical with that decided in the suit in Illinois for separate maintenance. This being the case, it follows that the Supreme Court of California in affirming the judgment of divorce, failed to give to the decree of the Illinois court the due faith and credit to which it was entitled, and thereby violated the Constitution of the United States."

With the change of names and dates, the above case is on all fours with this one and rules it.

If the present action was not barred by the decree of the Illinois court, it would be by the judgment of the court of Larimer county, Colorado. The contention that the verdict of the jury in that case was not supported by a judgment cannot be sustained. In the opinion of the court in a collateral proceeding, which was duly certified and introduced in evidence without objection, the judgment based on the jury's verdict is quoted verbatim. In that opinion the court recited the return of the verdict in the divorce proceeding finding the defendant, Cora B. Ashton, not guilty of cruelty, the denial of the motion for a new trial, and the final judgment of the court rendered in these words: "It is considered by the court that said plaintiff take nothing by his said suit, and that said defendant go hence, and have and recover of and from the said plaintiff her costs in this behalf laid out and expended to be taxed as costs and have execution therefor."

It is true, the cause of action alleged in the Colorado case was "cruel treatment," etc., and the ground for divorce in the instant case is desertion. But this ground might have been alleged and presented to the Colorado court and its judgment is as binding on that issue as if it had been formally presented. In the recent case of *Robinson* v. *Missouri Pac. Transportation Co.*, ante p. 593, 93 S. W. (2d) 311, in line with many former decisions which are therein cited, the court laid down the following rule: "It is well-settled doctrine in this jurisdiction that a judgment of a court of competent jurisdiction is conclusive of all questions within the issue, whether formally litigated or not. It extends not only to questions of fact and law which were decided in the former suit, but also to the grounds of recovery or defense which might have been, but were not, presented."

The trial court allowed appellant the sum of $87.50 per month as alimony *pendente lite* and refused to allow her any fee for her present attorneys, it appearing that $200 had been allowed an attorney who had been employed to file a special plea, and who had withdrawn from the case. The present attorneys have rendered

faithful and efficient service under difficult circumstances, and should be allowed a fee commensurate with those services, taking into consideration the financial condition of the appellee; so, also, should the alimony *pendente lite* be allowed. In the matter of services the attorneys have rendered we are well advised, but as to the financial status of appellee, there is but little in this record to enlighten us save the *ex parte* affidavits of appellant and appellee. We prefer to disregard these affidavits and seek, as the source of our information, the proceedings and orders of the court in which the marital difficulties of the litigants have been last considered—that is, the Nevada court. An examination of the exhibits discloses that much evidence was taken, a considerable part of which, we are constrained to believe, related to the wealth of the appellee. A number of petitions were filed for allowance of alimony *pendente lite* and attorneys' fees and evidence appears to have been taken on these motions. Petitions for modification of the orders as to these matters were filed and modifications were made from time to time. It appears that during the first year or two of the litigation in Nevada, alimony *pendente lite* in the sum of $45 per week was allowed. As late as September 14, 1933, the allowance of $45 per week was continued by the court. Finally, in February, 1934, the alimony *pendente lite* was fixed at $175 per month. Attorney's fees were allowed from time to time in substantial amounts aggregating a large sum which has been calculated by the appellant to amount to $4,700. We have not examined the pages of the transcript referred to, but accept this as the true aggregate, since appellee does not dispute it. We are of the opinion that the proceedings in the Nevada court, where the matters involved appear to have been thoroughly investigated, are a more accurate criterion and a better source of information than the *ex parte* affidavits of the parties. It is not likely that the financial status of the appellee has greatly changed since February, 1934, and we, therefore, think that the alimony *pendente lite* should be fixed at $175 per month, the amount found reasonable and proper by the Nevada court at that time. We are also of

the opinion that the sum of $750 is a reasonable and proper fee for appellant's present attorneys.

It is, therefore, ordered that appellant be allowed $175 per month from June 3, 1935, the date of her special appearance, until the present date. It is further ordered that the appellant be allowed the sum of $750 as attorneys' fees, and that the judgment of the court below be reversed, and appellee's complaint be dismissed for want of equity.