BLAUVELT *v.* BLAUVELT.

4-5636

136 S. W. 2d 201

Opinion delivered January 22, 1940.

*Martin, Wootton & Martin,* for appellant.

*C. T. Cotham,* for appellee.

GRIFFIN SMITH, C. J.   The appeal is from a decree granting appellee a divorce from appellant.   In a cross-appeal appellee seeks to reverse the chancellor's finding that he should pay accrued alimony of $2,740, and $200 per month as permanent alimony.

Appellee is a lieutenant commander in the United States navy, retired.   He and appellant married in 1910 at Seattle, Washington, and have four children.   The youngest, a daughter, was 13 years of age when the cause was tried, and is the only minor.

In June, 1932, appellee sued for divorce at San Diego, California.   The court made an order requiring alimony payments of $200 per month *pendente lite.* Before the controversy could be finally heard appellee was transferred to Pensacola, Florida.   He dismissed the California suit.

Appellee testified that he separated from his wife in San Diego, and so informed her, but found, upon arriving in Pensacola that she had preceded him, and had rented a home.   Appellee resided in a hotel.   Appellant frequently sent the children to appellee with

messages asking that he move to her residence. He says that for economic reasons he finally consented to occupy a room in her home, with the understanding that he was free to go and come as convenience required. During this period he again told appellant of his intention to seek divorce, and urged that she go to her home in Bremerton, Washington. It was his thought, then, that after a year's separation differences could be adjusted.

While in Pensacola appellee brought suit again, alleging that final separation had occurred January 4, 1933. The action was begun December 30, 1933. The charges were habitual indulgence in violent and ungovernable fits of temper, and extreme cruelty. The findings were against appellee. However, alimony of $225 per month was awarded appellant. Appellee says that prior to trial he had voluntarily increased by $25 per month the amount directed by the California court to be paid.

Another transfer took appellee to Bremerton. Being dissatisfied with the Florida judgment (rendered by the circuit court of Escambia county, in which Pensacola is situated), he again invoked judicial relief by bringing a new suit in Bremerton. The action was dismissed.

Appellee's next unsuccessful effort was made in Dade county, Florida. Dismissal followed in 1936.

During the period of these far-flung assaults on the matrimonial contract, appellee was drawing a salary of $596.83 per month. This was the net sum received after deduction of an amount sufficient to pay premiums on a $10,000 policy of insurance, made payable to his wife and children.

March 3, 1938, appellee sued in Garland chancery court, the allegation being that ". . . plaintiff was compelled to leave the defendant because she was guilty of such indignities to him as to render his condition in life intolerable, in that she treated him with rudeness, contempt, abuse and studied neglect, habitually and systematically pursued, until it finally became impossible for the plaintiff to longer live with the defendant."

In appellee's brief it is said: ''When this cause was finally submitted to the Garland chancery court the appellee, largely on account of the continued persecution and harassment of appellant, had been forced to go on the retired list of the U. S. navy, and his salary had been reduced . . . to $296 per month.'' Appellee testified that the amount he received monthly ''after the deduction of the insurance premium (which is deducted by the government) is $296.09.''

Retirement from active naval service occurred February 1, 1937.

In response to the complaint, appellant, on July 6th, 1938, asked the court for temporary maintenance, attorney's fees, and cost. (Following the Florida judgment for payments of $225, appellee reduced his remittances, first to $100 per month, then to $80.) The Garland chancery court made certain allowances for an attorney and costs, and directed the defendant to continue payment of $80 per month until the cause should be heard on its merits.

Plaintiff completed his testimony August 30. October 25 appellant filed a demurrer to the complaint, and to the evidence. She alleged (1) that the complaint did not state a cause of action; (2) that the evidence did not entitle plaintiff to a decree; (3) that no indignities were alleged or proved to have occurred within five years; (4) that no cause for divorce for desertion had been alleged or proved; (5) that all grounds for divorce were barred by the judgment rendered by the Florida court; and (6) that the plaintiff was in default in alimony payments.

In his motion to strike the demurrer appellant urged it was not filed in apt time. He pleaded that the order of the [Garland chancery] court had been complied with relative to maintenance, attorney's fees, and costs, and showed that the plaintiff had completed his depositions August 30, and had rested.

February 10, 1939, an amendment to the complaint was filed, alleging desertion and abandonment for more than a year.

Appellant's demurrer was overruled February 15. Thirty days were allowed for the filing of appellant's testimony.

February 28 appellant filed answer and cross-complaint. There was denial that any cause of action in plaintiff's favor had occurred since the Florida decree was rendered. That decree was especially pleaded as a bar to all causes originating prior to its rendition. The contention was that "All matters alleged in the complaint in this action are *res judicata,* having been determined againt plaintiff by [the Florida court]."

Appellee insists that because § 1430 of Pope's Digest uses the word "must" in fixing the time, within which a defendant may respond or cross-complain, action of the chancellor in permitting appellant to answer, after her demurrer was overruled, was, arbitrary. The point is not well taken. It is discretionary with the court to allow or reject a belated answer. *McCall* v. *North Pine Bluff Realty Co.,* 125 Ark. 553, 188 S. W. 1178. It will be presumed that reasons satisfactory to the trial court were shown for the delay.

In the decree here appealed from the court found that "The allegations of the plaintiff's amendment to the complaint have been sustained by the evidence and the plaintiff is entitled to an absolute divorce from the defendant on the grounds of desertion. The answer and cross-complaint of the defendant, setting up a plea of *res judicata* as to the matters and issues involved in this action, [are] hereby dismissed for want of equity for the reason that the judgment of the circuit court of Escambia county in an action between the same parties, and the court having jurisdiction of the parties, is not determinative of the issues in this case, but the prayer of the cross-complaint for accrued alimony in the sum of $2,740 to February 4, 1939, be and the same is hereby granted. . . . That the defendant . . . is entitled to receive the sum of $200 per month permanent alimony . . . as provided in the [Florida] decree entered February 12, 1934."

The appellee's testimony seems conclusive of the proposition that the grounds upon which divorce was denied in Florida were substantially the same as those alleged in appellee's original complaint in the case at bar.

In his reply to appellant's answer, and in the answer to the cross-complaint, appellee refers to the ". . . duly authenticated copy" of the decree of the circuit court of Escambia county. The authenticity of the copy appears to have been conceded, but its effect is contested.

Grounds for divorce in this state are enumerated in § 4381 of Pope's Digest, as amended by act 20, approved January 27, 1939. Section 4386 requires that the plaintiff prove (1) a residence in the state for three months next before the final judgment granting a divorce in the action and a residence for two months next before the commencement of the action; (2) that the cause of divorce [must have] occurred or existed in this state, or if out of the state, that it was a legal cause for divorce in this state, the laws of this state to govern exclusively and independently of the laws of any other state to the cause of divorce; (3) that the cause of divorce occurred or existed within five years next before the commencement of the suit.

Appellee testified that he lived with his wife ". . . until the fourth of January, 1933, when I left [her] at Pensacola." There is this further statement: "My condition in life has been rendered intolerable by her conduct, and my cause for divorce occurred and existed before the filing of this case in California and other states, and within five years next before the filing of this suit. I have no property."

It is quite clear that in seeking divorce, appellee directed his testimony to grounds provided in the fifth subdivision of § 4381 of Pope's Digest.

There is no testimony showing that subsequent to the Florida decree appellee undertook to effectuate a reconciliation with his wife. The contrary appears. The suit he filed in Washington, and the present action —the latter having been brought five years and two

months after final separation—are evidences of his attitudes. The conduct which he asserts gave rise to an intolerable condition constituted the ground upon which he relied for divorce in Escambia county. His testimony was: "I separated from her because of indignities which rendered my condition in life intolerable." The result of that trial must have been a finding that his allegations were not sustained; or, if sustained, that there had been condonation or other reasons for dismissing the prayer for divorce.

The parties in the Florida proceeding, having been the same as those in the instant case, and the grounds relied upon in Florida having been substantially the same as causes alleged here, it follows that the foreign judgment was *res judicata* of the matters litigated. *Ashton* v. *Ashton*, 192 Ark. 774, 94 S. W. 2d 1033. Where, however, the defendant against whom alimony has been adjudged alleges and proves in a later proceeding that his financial condition has changed for the worse, and that it would be inequitable to require continued payment of a sum fixed at a time and in circumstances showing such defendant's ability to pay, relief may be granted.

In the final decree in Florida, jurisdiction was expressly retained "to change and modify [the alimony award] upon showing of changed conditions."

The rule announced in the Ashton Case is generally approved. *Ball* v. *Ball*, 189 Ark. 975, 76 S. W. 2d 71. An interesting discussion of the subject is found in Leflar's Conflict of Laws, § 135, *et seq*. See cases there cited.

In the Ball Case it was said that denial of a decree upon a particular ground is no bar to a suit for divorce upon a cause of action which subsequently arose.

The chancery court of Garland county had jurisdiction in respect of any new cause of action. The new cause—and the only new cause asserted—was desertion. Desertion, being a continuing cause, was not concluded

by the Florida decree if it occurred after the adjudication[1].

If appellee was entitled to a divorce in Garland county because of desertion, he was entitled to the same relief in Florida. His own testimony and his admitted actions affirm the fact that since June, 1932 he has refused to live with his wife.

We think the Garland chancery court had jurisdiction to adjust the allowance for maintenance, appellant having applied for affirmative relief in the matter of attorney's fees, etc. In *Zentzis* v. *Zentzis*, 163 Wis. 342, 158 N. W. 284, it was said: "There is a well-recognized practice that an award of alimony is subject to modification at any time by the court that awarded it or by an independent action in another court in either the same state or a foreign state, but such power to revise and alter a judgment for alimony does not apply to judgments in divorce actions making a final division and distribution of the husband's estate."

In the case of *Gibson* v. *Gibson*, 81 Misc. 508, 143 N. Y. Supp. 37, the court considered rights of the parties where the wife, in 1910, obtained in New York state a judgment for separate maintenance. She went to Ohio and procured an absolute divorce. Upon failure of the defendant, after the absolute divorce had been granted, to pay under the New York court order, the wife moved in the latter court to have the husband punished for contempt. The defendant contended that when the Ohio divorce was granted he was relieved of the burden of separate maintenance. The court stated that the proper practice required him to move for modification of the first decree. In the opinion the court said:

"The direction for the payment of alimony in actions for a judicial separation proceeds upon a different theory than provisions for alimony in cases of absolute divorce. In the latter class of cases the marriage is dissolved, and the judgment for alimony in such cases is rather in the

---

[1] In 1935, by Chapter 16975 (No. 204) the Florida legislature enacted a so-called 90-day divorce law. The Compiled General Laws of Florida, 1937, show that "Wilful, obstinate and continued desertion of complainant by defendant for one year" will justify a divorce.

nature of a penalty imposed upon the guilty party for violation of his marriage vows and obligations. Alimony in such cases is rather a substitute for the rights of the innocent wife which the divorce cuts off and forbids in the future.

"The plaintiff in this case has seen fit to become a resident of Ohio, and to invoke the jurisdiction of the courts of that state, and obtain an absolute divorce from the defendant. This divorce, we have seen, she is estopped from questioning, and it, in effect, has terminated the marriage relation between herself and the plaintiff, upon which the provision of the decree for the payment of alimony was predicated. In legal contemplation the Ohio decree was just as effective to terminate the marriage relation as the death of the defendant would have been. Having elected to terminate that relation by proceedings in the Ohio court, we do not think the plaintiff can insist that she still has the right to enjoy the benefits flowing from that relationship, and it follows that the judgment directing the payment of alimony should be modified as asked."

In the case at bar the trial court acquired jurisdiction to hear the divorce complaint, and having jurisdiction for that purpose it was empowered to determine whether, because of changed conditions, payment of $225 per month in alimony was equitable.

We hold, therefore, that on allegations other than desertion the Florida decree was *res judicata;* that appellee was not abandoned by appellant, but that the contrary is true; that appellee was delinquent in payments directed by the Florida decree, and will be required to abide such decree; that whether there was an agreement between appellant and appellee for payments less than those called for by the order is a question of fact for determination of the chancellor on remand; that alimony equal to one-half of appellee's salary of $296.09 should be paid appellant, amounting to $148.04, together with any sums found by the chancellor to have been delinquent; that the divorce was erroneously decreed, and should be (and is) reversed. It is so ordered.

It is stated in appellee's brief that in good faith, relying upon the decree of divorce, he has remarried. This is unfortunate, but does not change the law. In *Womack* v. *Womack,* 73 Ark. 281, 83 S. W. 937, 1136, the husband procured a fraudulent decree of divorce, such decree having been rendered August 31, 1899. December 17, 1900, the wife brought suit to set aside a conveyance made by her to the defendant while the marriage relationship existed, and to vacate the decree of divorce. The chancellor dismissed the complaint, and the wife appealed. The decree was reversed. On motion to modify, Chief Justice Hill said:

"Since the decision here appellee files a motion to modify the decree, and sets forth that he was married in Oklahoma July 15, 1903; that a child was born of such marriage; . . . that he contracted the marriage . . . in good faith, having no idea that there was or would be any attack on the decree of divorce, and praying a modification to the extent that the cause be remanded and evidence be adduced of these facts, to the end that this marriage be protected." After reciting certain facts, the Chief Justice continued: "These suits to vacate decrees on ground of fraud are maintained even when the party committing the fraud has remarried before the institution of the suit. . . . The delay in this case in bringing the suit did not work any prejudice to third person. Had the party remarried while there was considerable delay, that would be a circumstance strongly tending against sustaining the action. No such considerations are in this case. The marriage occurred in the face of an appeal pending here in a cause directly seeking to annul the divorce."

While relief for the husband was denied because he had fraudulently procured the divorce, the woman he married was not a party thereto, and her status on motion to modify was a matter of consideration to the same extent as was that of her husband. The ground upon which the decision seems to rest is that the parties married with the knowledge that an appeal was pending. The same is true here, and if appellee elected to

take his chances on affirmance of the decree, it was a risk he assumed with full knowledge of possible eventualities.

The decree is reversed and the cause remanded with directions to proceed in a manner not inconsistent with this opinion.