SHANNON, Acting Chief Judge.
This is an interlocutory appeal from an order of the Circuit Court for Highlands County in a condemnation proceeding brought by the appellee, Central and Southern Florida Flood Control District. Appellant Winston B. Carlton, the owner of one of the parcels sought to be condemned, answered the petition and moved to dismiss, alleging that his land was located in Okeechobee County and that therefore the Highlands County Circuit Court did not have jurisdiction over the subject matter. After taking considerable testimony the trial judge found the Carlton land to be located in Highlands County and that the court had jurisdiction. Consequently, the motion to dismiss was denied, and from this order appeal is taken.
*657 The appellant contends that his land lies to the east of the boundary separating Okeechobee from Highlands County, thus placing his parcel in Okeechobee County. The issue on appeal is whether the condemnation suit is being brought in the county “wherein the land lies,” as required by Fla.Stat., Sec. 73.01, F.S.A., and this question will be answered by determining the proper location of the Okeechobec-High-lands boundary.
Article VIII, Section 3, of the Florida Constitution, F.S.A., provides in part that “[t]he Legislature shall have power to establish new counties, and to change county lines.” Pursuant to this authority the Florida Legislature, in 1917, fixed the western portion of the Okeechobee County boundary as:
“* * * [t] hence west on the line dividing townships thirty-two and thirty-three south, to the Kissimmee river; thence in a southerly direction along the thread of the Kissimmee river to the normal water level on the boundary of Lake Okeechobee * * (Emphasis added). Fla.Stat., Sec. 7.47, F.S.A.
In 1921 the Legislature established the eastern boundary of Highlands County as:
“ * * * thence east on township line dividing townships thirty-two and thirty-three south, to the intersection of same with the Kissimmee river; thence southerly along the thread of said river and bordering Okeechobee county * * (Emphasis added). Fla. Stat., See. 7.28, F.S.A.
A comparison of the two descriptions stated above reveals identical language regarding “the thread” of the Kissimmee River. It is reasonable to assume that the legislative intent, expressed only four years apart, was' neither contradictory nor referable to two different locations as the common boundary. We conclude, therefore, that both Legislatures had in mind the same location in speaking of “the thread” of the river.
The thread of a river is a middle line; a line running through the middle of a stream. Black, Law Dictionary (4th ed. 1951). During the hearings conducted in the lower court there was the testimony of six longtime residents of the area, thoroughly familiar with the Kissimmee River, that the river’s present course is the same as it has been for many years. Two of the witnesses had recollections of the river’s location prior to 1917, and they both stated that the course had not changed since the fixing of the Okeechobee-Highlands boundary. There was also testimony that the area west of the present river, which appellant claims is the boundary, is a partially dried up branch known as the Hole-in-the-Wall-Slough. However, we find no evidence to support the claim that this branch was ever the “thread” of the Kissim-mee River, or that it was ever so recognized.
It is appellant’s contention that, notwithstanding the physical location of the river, the boundary is actually the Hole-in-the-Wall-Slough because this is the river’s purported location on the plat of an 1859 United States Government Survey. We are unable to align ourselves with this position because, on the basis of the evidence presented below plus the plain meaning of the words, “thread of the river,” we find the legislative intent was to locate the boundary according to the river as it then ran. Parish of Caddo v. Parish of Bossier, 164 La. 378, 113 So. 882. The river is now located in the same place as it was in 1917, so we are not troubled by problems of shifting boundaries.
The appellant has alternatively argued that the Federal Survey has established the location of the Kissimmee River, and that this surveyed location is controlling. While we do not disagree with the general rule that property rights acquired in reliance on a government survey *658 cannot be altered by a subsequent survey, Kelsey v. Lake Childs Co., 1927, 93 Fla. 743, 112 So. 887, we fail to find that rule applicable here. There is just no connection between the location of a river as it appears from a government survey, and the constitutional prerogative of the Florida Legislature to fix county boundaries. Moreover, as the evidence adduced below clearly indicates, the survey did not even purport to actually locate the river. This is obvious from the plat itself, which contains the words, “impracticable swamp and saw grass” in the area surrounding the river. Further confirmation of the original survey’s failure to actually chart the river’s course appears from the field notes. A surveyor called as an expert witness in the hearings below testified with regard to the field notes, as follows:
“A. Well, I have done a complete study of this township; and, as far as the section breakdown here, it is a perfectly good plat. But it does not purport to show the true location of the river.
“Q. How do you know this?
“A. From the original field notes.
* * * * * *
“Q. I will refer to the 1859 survey— will you, as a surveyor, go out in the field, retrace the river, using information either on this plat or these field notes?
“A. No.
“Q. Why not?
“A. Because the field notes are not conclusive as to the location of the Kissimmee River.
“Q. Is there any indication in either the plat or the field notes that Mr. Reyes [the surveyor for the government in 1859] purported to locate the Kissimmee River ?
“A. No.
“Q. What does he purport to do.
“A. He purports to just section this. Well, Mr. Reyes actually just ran out the exterior of the township.
“THE COURT: In other words, those notes there don’t establish the location of Kissimmee River in that area?
“A. No, sir.”
Other portions of the transcribed testimony also accord with the conclusion that the location of the Kissimmee River as shown on the plat was merely an estimate by the original surveyor, who did not even purport to have shown the true location.
Appellant has also attempted to prove that his parcel is located in Okeechobee County by showing that real property taxes on the land have been paid to Okeechobee County since 1918. Appellant has not cited any authority for this position and we fail to see how such evidence could have any probative value regarding the true location of the county line.
For the reasons mentioned above we conclude that the trial judge was correct in his implied finding that the Legislature intended the Okeechobee-Highlands County boundary to be the Kissimmee River as it was in 1917 and 1921, and that the river’s location has not substantially changed since then. We therefore affirm the finding that the parcel here in question, being west of the boundary line, is in Highlands County.
Affirmed.
LILES, J., and MORROW, R. O., Associate Judge, concur.