375 S.E.2d 190

**Sue A. CARR**

v.

**Donald L. CARR.**

**No. 17934.**

Supreme Court of Appeals of West Virginia.

Nov. 17, 1988.

Cecil C. Varney, Williamson, for Sue A. Carr.

Robert C. Chambers, Huntington, for Donald L. Carr.

BROTHERTON, Justice:

This proceeding relates to a petition for modification of a California support decree filed in West Virginia by the petitioner-mother. The respondent-father, a resident of California, answered and raised the issue of West Virginia's subject matter jurisdiction over the petition. On October 31, 1986, the Cabell County Circuit Court dismissed the petitioner's application for lack of jurisdiction to modify a foreign support order.

The parties to this action, Sue and Donald Carr, were divorced in California by order dated January 21, 1976. Donald Carr was ordered to pay child support for their child, Robert (Bobby) Carr, in the amount of $158.60 monthly until Bobby reached "the age of 18, is emancipated or until further order of the court, or the respondent's death." The child, Bobby, was born on July 18, 1972.

The petitioner-wife returned to West Virginia with Bobby in 1976. They currently reside in Cabell County, West Virginia, where they have resided continuously since 1982. On November 6, 1985, Sue Carr filed a petition for modification of the California child support order in the Circuit Court of Cabell County. A summons and copy of the petition were personally served on the respondent, Donald Carr, while he was visiting relatives in West Virginia. Mr. Carr continues to reside in California.

The respondent filed an answer to the petition, alleging that the West Virginia court lacked jurisdiction to modify a foreign divorce decree, or, alternatively, that the West Virginia court should decline to exercise jurisdiction as being an inconvenient and inappropriate forum. By final order dated October 31, 1986, the Circuit Court of Cabell County dismissed the petition because of lack of jurisdiction to enter an award modifying the foreign support decree. This proceeding is the petitioner's appeal to the West Virginia Supreme Court of Appeals from that final ruling.

The issue before us, then, is whether a West Virginia court has jurisdiction in this action to modify a foreign child support decree where the respondent-father is a resident of another state.

## I.

■ We turn first to the issue of whether the non-resident respondent is properly before this Court. The due process clause of the Fourteenth Amendment serves as a limit on a state court's authority to exercise jurisdiction over a non-resident defendant.[1] This issue was addressed in *Kulko v. California Superior Court*, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978), where the United States Supreme Court held that the exercise of personal jurisdiction by California courts over the appellant-father, a resident of New York, violated the due process clause of the Fourteenth Amendment. In *Kulko*, the support decree was entered in New York and the divorce was obtained in Haiti. Citing the due process standards of minimum contacts and reasonable notice developed in *Pennoyer v. Neff*,[2] *International Shoe Co. v. Washington*,[3] and *Mullane v. Central Hanover Trust Co.*,[4] the Court found that the mere act of sending a child to live with her mother in California connoted no intent to obtain a corresponding benefit in California which would make equitable California's exercise of personal jurisdiction. *Kulko*, 436 U.S. at 91, 97, 98 S.Ct. at 1696, 1699–1700, 56 L.Ed.2d at 140–41, 145. The father did not visit California himself, but merely sent his daughter to live in California at the child's request.

Unlike the fact situation in *Kulko*, the respondent-father in this case was personally served while visiting relatives in West Virginia. We believe the respondent has established sufficient contact with West Virginia to make the exercise of jurisdiction equitable.[5] In fact, the respondent does not dispute the issue of personal jurisdiction, arguing only against the existence of subject matter jurisdiction. Consequently, we believe the respondent is properly before this Court.[6]

---

1. *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977).

2. 95 U.S. 714, 24 L.Ed. 565 (1878).

3. 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

4. 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

5. *See Hartley v. Ungvari*, 173 W.Va. 583, 318 S.E.2d 634 (1984), where we noted personal jurisdiction could have been obtained over a non-resident defendant-father on many instances while the father was visiting his child in West Virginia.

6. Although we are not, of course, bound by the decisions of other state courts, we note with interest the Oregon Court of Appeals decision in *In the Matter of the Marriage of Hazen and Henderson*, 74 Or.App. 322, 702 P.2d 1143 (1985). In *Hazen*, the father objected to an action for modification of a child support decree on the basis of lack of personal jurisdiction. The Oregon court concluded that by visiting his child in Oregon, the nonresident father had established sufficient contact with Oregon relating to custody to find it fair to require him to litigate the issue of the child's support in Oregon. The court admitted it was a "close case," but noted Oregon's substantial interest in facilitating child support actions on the behalf of resident children and the interests of the mother and child, both residents, in proceeding with the action in Oregon. *Id.* 702 P.2d at 1147.

## II.

█ We now address the issue of whether West Virginia has the authority to exercise jurisdiction over this action for support, and consequently, the non-resident respondent.

The United States Supreme Court decision in *Kulko*, while enlightening, did not reach the issue of whether California could have modified the New York support agreement since personal jurisdiction had not been obtained over the defendant. Therefore, we must look elsewhere for guidance.

This Court addressed the issue tangentially in *State ex rel. Ravitz v. Fox*, 166 W.Va. 194, 273 S.E.2d 370 (1980). In *Ravitz*, the parties were divorced in West Virginia in 1975. Subsequently, the father moved to New Jersey and the mother and children to Florida. In 1976, the mother instituted an action in New Jersey seeking to enforce the divorce decree and collect accrued support payments. The parties then agreed on those issues and an order was entered dealing only with visitation. In 1979, the mother initiated modification proceedings in West Virginia. Counsel for the father appeared specially in West Virginia and moved to dismiss, alleging lack of personal jurisdiction since the father resided in New Jersey and stating that New Jersey had modified and assumed jurisdiction, thus divesting West Virginia courts of personal jurisdiction.

In *Ravitz*, the Court concluded that West Virginia had continuing jurisdiction to modify a divorce and support decree issued by a West Virginia court.[7] Specifically, the Court held that:

[o]nce the circuit court's jurisdiction of the person attaches in a divorce action, jurisdiction continues throughout all subsequent proceedings which arise out of the original cause of action, including matters related to alimony, child support, and custody, and that a party may not avoid the continuing jurisdiction of the trial court to modify orders concerning alimony, child support, and custody by moving outside the geographical jurisdiction of this State.

166 W.Va. at 199, 273 S.E.2d at 373. Under this approach, the California court would be the proper forum in which to modify the California support decree.[8]

## III.

█ Our inquiry does not end, however, with the determination of West Virginia's position on modification of foreign support decrees. This State adheres to the traditional *lex loci delicti* theory of conflicts of law. *Paul v. National Life*, 177 W.Va. 427, 352 S.E.2d 550 (1986). Under that doctrine, the law of California, as the state of the original decree, should apply.

A review of California law reveals that the California Supreme Court permits the modification of a foreign support decree.[9] In *Worthley v. Worthley*, 44 Cal.2d 465, 283 P.2d 19 (1955), the California Supreme Court was faced with a situation in which the parties, who were married in New Jersey and divorced in Nevada, had previously entered into a support agreement in New Jersey. The defendant-husband moved to California, where the plaintiff-wife commenced an action to enforce the New Jer-

---

7. We observed in *Ravitz*, as we do today, that an order involving child support is always subject to continuing judicial modification. 166 W.Va. at 197, 273 S.E.2d at 372. *See In re Estate of Hereford*, 162 W.Va. 477, 250 S.E.2d 45 (1978).

8. *See also Hill v. Hill*, 153 W.Va. 392, 168 S.E.2d 803 (1969), where we held "[i]n a case involving the support of a child the awarding court must necessarily retain jurisdiction." 153 W.Va. at 398, 168 S.E.2d at 807. We also held the divorce decree in *Hill* was sufficiently final to permit a West Virginia circuit court to enforce a Pennsylvania judgment in order to collect arrearages of child support. *Id.* 153 W.Va. at 401–03, 168 S.E.2d at 809.

9. *See Engle v. Superior Court*, 140 Cal.App.2d 71, 294 P.2d 1026 (1956), where the California court held that where both parties were current residents of California, it could modify a Florida divorce decree since California had a greater interest; *Straeck v. Straeck*, 156 Cal.App.3d 617, 203 Cal.Rptr. 69 (1984), where the court held that when both parties were divorced in California, a county different from the county in which the divorce was granted could modify the decree under the Uniform Reciprocal Enforcement of Support Act.

sey support agreement. The husband contended the Nevada divorce terminated any right to support from the New Jersey agreement.

The California Supreme Court reported that it had previously determined a California court would recognize and give prospective enforcement to a foreign alimony decree, despite the fact the decree remained subject to modification under the law of the state which originally rendered the decree. In doing so, the court established the foreign decree as a California decree subject to enforcement by contempt if the defendant failed to comply.[10] The court also recognized that in *Griffin v. Griffin,* 327 U.S. 220, 66 S.Ct. 556, 90 L.Ed. 635 (1946), the United States Supreme Court held an action to enforce an alimony decree for arrearages could be maintained in another jurisdiction with proper notice.

Speaking for the California Supreme Court, Justice Traynor concluded that "foreign-created alimony and support obligations are enforceable in this state. In an action to enforce a modifiable support obligation, either party may tender and litigate any plea for modification that could be presented to the courts of the state where the alimony or support decree was originally rendered." 283 P.2d at 25.[11] In reaching its conclusion, the court noted that the argument that alimony and support obligations were enforceable only in the state in which they had been rendered was rejected by the California Supreme Court in *Biewend* and by the legislature in enacting the Uniform Reciprocal Enforcement of Support Act (URESA). Under URESA, California must recognize foreign alimony and support decrees and afford the defendant an opportunity to litigate the issue of

modification. *Id.* at 24. Justice Traynor observed that the result would be anomalous if the court would refuse to follow the policy of the legislature, noting that there would be two rules in California—one for proceedings under URESA and one for all other proceedings to enforce foreign decrees. *Id.*

Finally, in *Worthley,* the court pointed out there was no valid reason why the California courts should refuse to hear the plaintiff's plea for enforcement and the defendant's plea for modification where both parties were before the court. *Id.* The court concluded there was no merit to the argument that the issue of modification should be tried in the state of the original decree as a matter of convenience, noting that the law of the state of original jurisdiction could be judicially noticed and applied. *Id.* at 25.

■ Turning to the case at bar, we have both parties, albeit reluctantly, before us. Consequently, under a strict application of California law, the petitioner could maintain an action for modification in West Virginia. However, we note an important distinction between the present situation and the facts in *Worthley.* In *Worthley,* the court's decision provided a convenient forum for both parties as the petitioner voluntarily filed the petition where the respondent resided. In the present situation, the non-resident respondent is not voluntarily before us and is faced with long distance litigation and travel if the action is litigated in West Virginia. We do not believe West Virginia is a convenient forum for this action.

As observed in both *Worthley* and *Kulko,* this action is not the only method to

10.  See *Biewend v. Biewend,* 17 Cal.2d 108, 109 P.2d 701 (1941).

11.  Justice Traynor also cited case law from several states which permitted some form of prospective modification of a sister state decree. In *Johnson v. Johnson,* 196 S.C. 474, 13 S.E.2d 593 (1941), the South Carolina Supreme Court held that under Full Faith and Credit, a South Carolina court could not amend or change a foreign divorce decree for alimony established in South Carolina; however, the degree to which the decree would be enforced would be

determined by South Carolina law. The South Carolina court ruled that although it could not modify a foreign decree as to the amount of alimony, nothing precluded the enforcement of a smaller amount. This case clearly illustrates the problem the Uniform Reciprocal Enforcement of Support Act was designed to correct. See also *Robison v. Robison,* 9 N.J. 288, 88 A.2d 202, *cert. denied,* 344 U.S. 829, 73 S.Ct. 33, 97 L.Ed. 645 (1952); *Blauvelt v. Blauvelt,* 199 Ark. 710, 136 S.W.2d 201 (1940).

obtain modification of a foreign support obligation. We believe a more equitable, efficient, and consistent result can be obtained by proceeding under the URESA statute. The Act, which has been adopted in some form by every state in the Union, protects residents and non-residents of West Virginia alike from undue expense and travel. By proceeding under the Act, we increase predictability and avoid any question of forum shopping on the part of a petitioner who would seek to avoid an unfavorable support agreement by moving to a state with a more favorable law.[12] Moreover, the end result is the same regardless of which method is used to file the petition. Under *lex loci* principles, we would apply California law, and under URESA, the Court would apply the law of California, the responding state.[13]

## IV.

Both California and West Virginia are signatories to the URESA.[14] Although the URESA statutes do not explicitly include the modification of a support order within the coverage of the Act, subsequent case law has included modification within the purposes of the URESA.[15]

The purpose of the West Virginia URESA statute, W.Va.Code § 48A–7–1, et seq. (1986), is clearly stated in Section 1: "The purposes of this article are to improve and extend by reciprocal legislation the enforcement of duties of support." Section 1652 of the California Code of Civil Procedure similarly provides that: "The purposes of this title are to improve and extend by reciprocal legislation the enforcement of duties of support and to make uniform the law with respect thereto." The purposes of the Act have been further defined by the

Supreme Court in *Kulko*, where the Court explained that URESA provides a mechanism between courts in different states, facilitates the procurement and enforcement of child support decrees, and achieves the state's legitimate interest in ensuring the support of resident children without undue disruption of the children or travel of either party. 436 U.S. at 98–99, 98 S.Ct. at 1700, 56 L.Ed.2d at 145–46.

The petitioner's fears that proceeding under URESA would create additional expense and a less favorable result are unfounded. California law will apply regardless of whether we choose to exercise jurisdiction or the action is brought under URESA. Further, under California's version of URESA, a prosecuting attorney is assigned to the petition after it has been transmitted to California. Section 1680 of the California URESA statute requires the prosecuting attorney to "diligently" prosecute the case, taking whatever action is required to obtain jurisdiction over the defendant and his property. The information required to determine the support necessary is obtained through deposition. Thus, all relevant information will be before the California court.

In light of the remedial purposes of URESA, and the expressed purpose of the California URESA statute to make uniform the law related to the enforcement of support obligations, we decline to exercise jurisdiction over this action. We believe a more equitable and efficient result can be obtained through URESA. By proceeding under URESA, we further the intent of the West Virginia Legislature in adopting the URESA statute and the express purpose of the California statute, the *lex loci* of the decree, to make uniform the law with respect to enforcement of duties of support.

---

12. We do not suggest that the petitioner in this case is forum shopping. Rather, we address the general havoc our mobile society has wreaked on individuals who seek to modify orders entered by states in which they no longer reside. We believe URESA, like the Uniform Child Custody Jurisdiction Act, is the most efficient and equitable remedy for this problem. For a similar discussion regarding the Uniform Child Custody Jurisdiction Act, *see also McAtee v. McAtee*, 174 W.Va. 129, 323 S.E.2d 611 (1984).

13. W.Va.Code § 48A–7–7 (1986); Cal.Code Civ. Proc. § 1670 (1968).

14. Cal.Code Civ.Proc. § 1650, et seq. (1968); W.Va.Code § 48A–7–1, et seq. (1986).

15. *See Kulko*, 436 U.S. at 98–100, 98 S.Ct. at 1700–01, 56 L.Ed.2d at 145–46; *In re Marriage of Popenhager*, 160 Cal.Rptr. 379, 99 Cal.App.3d 514 (1979); *In re Marriage of Straeck*, 203 Cal. Rptr. 69, 156 Cal.App.3d 617 (1984).

**18**

We direct that the petitioner's appeal be dismissed without prejudice to be refiled under the provisions of URESA.

AFFIRMED.