410 S.E.2d 285

**Jacqueline PRIES, Relator,**

v.

**Honorable Clarence L. WATT, III, Judge of the Circuit Court of Putnam County and John L. Pries, Respondents.**

**No. 20245.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 10, 1991.

Decided Oct. 17, 1991.

Brenda Waugh, Maureen Conley, Legal Aid Soc. of Charleston, Charleston, for relator.

David Hill, Hill, McCoy & Corey, Hurricane, for respondent John L. Pries.

MILLER, Chief Justice:

In this original proceeding in prohibition, the relator, Jacqueline Pries, seeks to prevent the respondent judge from proceeding further in a case for modification of spousal support filed in the Circuit Court of Putnam County by John L. Pries, the relator's ex-husband. The relator contends that the circuit court does not have jurisdiction of her person and that further proceedings therefore violate due process. We agree, and we make the rule in prohibition permanent.

In July of 1984, the relator and her husband were divorced in Morris County, New Jersey, after thirty-six years of marriage. The divorce decree required Mr. Pries to pay the relator $205 per week in alimony.

Sometime thereafter, Mr. Pries moved to Putnam County, West Virginia, and ceased making alimony payments. By order dated February 5, 1990, a New Jersey court found that Mr. Pries owed over $4,700 in back alimony as of December 15, 1989, and ordered him to pay an additional $100 towards reducing the arrearages. The rela-

tor was apparently able to attach a portion of Mr. Pries' social security benefits as partial payment of the alimony due.

In January of 1991, Mr. Pries filed a petition in the Circuit Court of Putnam County seeking modification of the New Jersey alimony award. The relator, who still resides in New Jersey, was served by mail with a copy of the complaint. Her pro se motion to dismiss the action for lack of personal jurisdiction was apparently denied, and the matter was set for hearing in June of 1991. The Legal Aid Society of Charleston undertook representation of the relator and instituted this proceeding in prohibition.

The United States Supreme Court has held that "[t]he Due Process Clause of the Fourteenth Amendment operates as a limitation on the jurisdiction of state courts to enter judgments affecting rights or interests of nonresident defendants.... [A] valid judgment imposing a personal obligation or duty in favor of the plaintiff may be entered only by the court having jurisdiction over the person of the defendant." *Kulko v. Superior Court*, 436 U.S. 84, 91, 98 S.Ct. 1690, 1696, 56 L.Ed.2d 132, 140 (1978). The Court cited two prerequisites for personal jurisdiction: First, the defendant must be afforded reasonable and adequate notice of the suit, and second, the defendant must have certain minimum contacts with the forum state such that the maintenance of the suit would not offend traditional concepts of fair play and substantial justice. *See International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The Court in *Kulko* recognized that an essential element of the minimum contacts question is whether the defendant's activities are such that it is reasonable and fair to subject him to suit in the forum state, a determination that must be made on the particular facts of each case. The majority in *Kulko* also quoted with approval this line from *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283, 1298 (1958): " '[I]t is

essential in each case that there be some act by which the defendant purposefully avails [him]self of the privilege of conducting activities within the forum State.' " 436 U.S. at 94, 98 S.Ct. at 1698, 56 L.Ed.2d at 142.

In *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), and, more recently, in *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987), the Supreme Court had occasion to elaborate on some of the factors that would be used to determine whether the exercise of jurisdiction was reasonable in view of the defendant's minimal contacts.[1]

> "A court must consider the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief. It must also weigh in its determination 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies.' *World–Wide Volkswagen*, 444 U.S., at 292 [100 S.Ct. at 564, 62 L.Ed.2d at 498] (citations omitted)." 480 U.S. at 113, 107 S.Ct. at 1033, 94 L.Ed.2d at 105.

We have followed the substance of these principles in our jurisdiction without reviewing them in detail. *See, e.g., Carr v. Carr*, 180 W.Va. 12, 375 S.E.2d 190 (1988); *Hinerman v. Levin*, 172 W.Va. 777, 310 S.E.2d 843 (1983); *S.R. v. City of Fairmont*, 167 W.Va. 880, 280 S.E.2d 712 (1981); *State ex rel. Coral Pools, Inc. v. Knapp*, 147 W.Va. 704, 131 S.E.2d 81 (1963). Illustrative of our rule in this area is the Syllabus of *S.R. v. City of Fairmont, supra*:

> " 'The standard of jurisdictional due process is that a foreign corporation must have such minimum contacts with the state of the forum that the maintenance of an action in the forum does not

---

**1.** Earlier in *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), the Supreme Court stated that the mere existence of a contract with an out-of-state party does not, of itself, automatically establish sufficient contacts with the other party's forum to justify the forum state's exercise of personal jurisdiction.

offend traditional notions of fair play and substantial justice.' Syllabus Point 1, *Hodge v. Sands Manufacturing Company*, 151 W.Va. 133, 150 S.E.2d 793 (1966)."

■ Under the foregoing United States Supreme Court cases, a more detailed test is appropriate to determine whether a state court has personal jurisdiction. Initially, we recognize that the Due Process Clause of the Fourteenth Amendment to the United States Constitution operates to limit jurisdiction of a state court to enter a judgment affecting the rights or interests of a nonresident defendant. This due process limitation requires a state court to have personal jurisdiction over the nonresident defendant. In order to obtain such personal jurisdiction, reasonable notice of the suit must be given the defendant. There also must be a sufficient connection or minimum contacts between the defendant and the forum state so that it will be fair and just to require a defense to be mounted in the forum state.

■ To what extent the defendant has minimum contacts depends upon the facts of the individual case. One essential inquiry is whether the defendant has purposefully acted to obtain benefits or privileges in the forum state. In determining whether the exercise of personal jurisdiction is reasonable, a court should consider the burden on the defendant, the interests of the forum state, and the plaintiff's interest in obtaining relief. Finally, consideration should be given to the interstate judicial system's interest in obtaining the most efficient resolution of controversies and the shared interest of the several states in furthering fundamental substantive social policies.

■ In the proceedings below, Mr. Pries seeks to reduce the relator's alimony award. Such an action obviously affects the relator's personal monetary rights and, as such, requires that she be subject to the court's jurisdiction.

This case closely parallels the facts in *Kulko, supra*, where, after separating, the husband remained in New York, the state of marital domicile, and the wife moved to California. The couple executed a separation agreement in New York which provided that the parties' two children were to reside with Mr. Kulko in New York during the school year and with their mother during their Christmas, Easter, and summer vacations. Mr. Kulko also agreed to pay $3,000 a year in child support. The terms of this agreement were later incorporated into a Haitian divorce decree obtained by Mrs. Kulko.

Subsequently, the parties' daughter expressed a desire to live full time with her mother. Mr. Kulko acquiesced and paid the child's airfare to California. A few years later, the couple's son expressed to his mother a desire to live with her. Without Mr. Kulko's knowledge, Mrs. Kulko sent the boy a plane ticket which he used to join his mother and sister in California.

Shortly afterwards, Mrs. Kulko filed suit in California to obtain an increase in child support. Mr. Kulko resisted on the ground that he had insufficient contacts to warrant the California court's assertion of personal jurisdiction over him. The California Supreme Court rejected this argument, reasoning that by sending his daughter to reside permanently in California, Mr. Kulko had "purposefully availed himself of the benefits and protections of the laws of California." *Kulko v. Superior Court*, 19 Cal.3d 514, 522, 138 Cal.Rptr. 586, 589, 564 P.2d 353, 358 (1977).

The United States Supreme Court rejected this conclusion, pointing out that the mere fact that Mr. Kulko "acquiesced" in the desire of his daughter to live with her mother was not a sufficient contact with the State of California to warrant imposition of the unreasonable burden of having to litigate a child support action there. The Supreme Court noted that there was no other activity that would bring Mr. Kulko in contact with the State of California. The Supreme Court also made the point that the former wife was not without remedy, as she could initiate a proceeding under the Uniform Reciprocal Enforcement of Support Act "and have its merits adjudicated in the State of the alleged obligor's

residence, without either party's having to leave his or her own State." 436 U.S. at 99, 56 L.Ed.2d at 145, 98 S.Ct. at 1700.

■ The contacts in this case are even more infrequent than those in *Kulko.* Simply stated, there is no evidence that the relator had any contact with West Virginia until this suit was filed. Other courts have reached the same conclusion in similar circumstances. *See, e.g., Burrill v. Sturm,* 490 So.2d 6 (Ala.Civ.App.1986); *Kumar v. Superior Court,* 32 Cal.3d 689, 186 Cal. Rptr. 772, 652 P.2d 1003 (1982); *Veazey v. Veazey,* 246 Ga. 376, 271 S.E.2d 449 (1980); *Egli v. Egli,* 447 N.W.2d 409 (Iowa App. 1989); *Ferguson v. Ferguson,* 411 N.W.2d 238 (Minn.App.1987); *Schofield v. Schofield,* 78 N.C.App. 657, 338 S.E.2d 132 (1986); *Matter of Marriage of Van Acker,* 97 Or.App. 343, 775 P.2d 921, *review denied,* 308 Or. 466, 781 P.2d 1215 (1989); *Paulk v. Paulk,* 656 S.W.2d 34 (Tenn.App. 1983); *Ford v. Durham,* 624 S.W.2d 737 (Tex.App.1981). We find that the assertion of personal jurisdiction over the relator in this instance violates due process.[2]

■ Where a court lacks jurisdiction over a nonresident defendant, prohibition is the appropriate remedy to prevent further prosecution of the suit. As we stated in Syllabus Point 3 of *State ex rel. McCartney v. Nuzum,* 161 W.Va. 740, 248 S.E.2d 318 (1978):

> "A writ of prohibition will lie where the trial court does not have jurisdiction or, having jurisdiction, exceeds its legitimate powers."

*See also Hechler v. Casey,* 175 W.Va. 431, 333 S.E.2d 799 (1985); *State ex rel. Arnold v. Egnor,* 166 W.Va. 411, 275 S.E.2d 15 (1981).

■ For the foregoing reasons, we find that the Circuit Court of Putnam County lacked personal jurisdiction over the relator. Consequently, we issue a writ of prohibition to prevent the circuit court from proceeding further in the underlying civil action.

Writ granted.

---

**2.** In *Carr v. Carr, supra,* we found the defendant nonresident father subject to our jurisdiction because he had been personally served in Cabell County while visiting relatives. His ex-wife and child had resided in Cabell County for several years before filing suit to modify a foreign support decree.