**FILED**

**October 26, 2022**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

State of West Virginia *ex rel.*
Historic Arms Corporation,
Petitioner,

**vs.)**    **No. 22-0217** (Hardy County 20-C-25)

The Hon. C. Carter Williams,
Judge of the Circuit Court of Hardy County,
Darrick J. Gust, and Emily Gust,
Respondents.

**MEMORANDUM DECISION**

Darrick J. and Emily Gust have brought claims against Historic Arms Corporation,[1] among others, in the Circuit Court of Hardy County, stemming from injuries Mr. Gust sustained in 2019 when an explosive device malfunctioned and detonated in his hand. Historic Arms—a Virginia limited liability company with a principal place of business in Virginia—moved the circuit court to dismiss the Gusts' claims, arguing that the court lacked personal jurisdiction over it. The court denied that motion and later denied Historic Arms's motion to amend its prior ruling. Now, Historic Arms petitions this Court to issue a writ prohibiting the circuit court from enforcing that order and continuing to exercise personal jurisdiction over it. The Gusts oppose issuance of the writ.

Upon a thorough review of the record, the arguments of counsel and applicable precedent, we conclude that the circuit court properly denied Historic Arms's motion to amend its earlier order denying the motion to dismiss the Gusts' claims. Furthermore, because this case does not present a new or significant issue of law, we find this matter to be proper for disposition in accordance with Rule 21 of the West Virginia Rules of Appellate Procedure.

### I. Factual and Procedural Background

In September 2019, Darrick J. Gust was training employees of the federal Drug Enforcement Agency on earthquake protocols at a combat training facility located in Hardy

---

[1] Historic Arms is represented by Douglas E. Kahle, Esq., and Nathan H. Walters, Esq. The Gusts are represented by L. Lee Javins II, Esq., D. Blake Carter, Jr., Esq., David A. Bosak, Esq., M. Bryan Slaughter, Esq., and Kyle McNew, Esq.

County, West Virginia. The training called for Mr. Gust, an employee of Panthera Training, LLC, to detonate an explosive. The explosive malfunctioned and detonated while Mr. Gust held the device in his right hand, six seconds earlier than he expected. Mr. Gust alleges that the premature explosion "obliterated" his hand. According to Mr. Gust, Panthera Training conducted the earthquake training for the DEA as a subcontractor to Panthera Enterprises, LLC, which also owned the Hardy County facility.[2]

Mr. Gust's employer, Panthera Training, is a Virginia limited liability company with its principal place of business in Hardy County, West Virginia. Historic Arms Corporation, the sole member of Panthera Training, is a Virginia corporation with its principal place of business in Cape Charles, Virginia. And Robert Starer is both the managing member of Panthera Training and Vice President of Historic Arms.

In 2020, Mr. Gust and his wife, Emily, filed a suit in the Circuit Court of Hardy County seeking damages related to injuries Mr. Gust sustained when the explosive malfunctioned at the Hardy County facility.[3] In June 2021, the Gusts amended their complaint to plead six claims against Mr. Starer and Historic Arms, among other defendants[4]: strict liability – ultrahazardous activity; negligence; negligent hiring, retention, and/or supervision; vicarious liability; joint venture; and loss of consortium. According to the amended complaint, Panthera Training manufactured and assembled the explosives necessary to conduct the earthquake protocol training with black powder and fuse assemblies (the Fuses) provided to it by Historic Arms[5] and/or Mr. Starer.

On July 15, 2021, Historic Arms (again, a Virginia corporation with a principal place of business in Virginia) moved to dismiss the amended complaint under West Virginia Rule of Civil Procedure 12(b)(2), for lack of personal jurisdiction.[6] In support of that motion, Mr. Starer stated

---

[2] According to the Gusts, Panthera Enterprises leased the training facility to Panthera Training.

[3] The Gusts' original complaint is not included in the appendix record.

[4] The Gusts also named Panthera Enterprises, LLC; Panthera Worldwide, LLC; Panthera Training Center, LLC; and Mr. Wilmer C. Bahr as defendants.

[5] Specifically, the Gusts alleged that Historic Arms is "primarily a seller of custom assault rifles and training programs for firearms owners; however, it also possessed and supplied / distributed components of explosives, including the components used to create explosive devices at issue in this litigation, to its subsidiary entity," Panthera Training. The Gusts levy other allegations against Historic Arms, along with the other defendants, including that they were engaged in an ultrahazardous activity and so are strictly liable for the harm to Mr. Gust resulting from that activity and that the components of the explosive were improperly maintained or stored.

[6] Rule 12(b)(2) provides in pertinent part that "the following defenses may at the option of the pleader be made by motion: . . . (2) lack of jurisdiction over the person . . . ." Historic Arms first filed a motion to dismiss the Gusts' original complaint in September 2020, along with the

that Historic Arms did not do business in West Virginia and was not in the business of manufacturing, assembling, distributing, testing, or using explosives.[7]  In response, the Gusts submitted six exhibits, including an affidavit by Mr. Gust and documents relating to the corporate structures of Panthera Training and Historic Arms.  The Gusts later supplemented their response with excerpts of the deposition of William White, former Vice President of Operations and General Manager of Panthera Training.[8]

On July 30, 2021, Mr. Starer moved for summary judgment of the claims against him, individually.  Mr. Starer argued that he shared in the immunity afforded to Panthera as Mr. Gust's employer under West Virginia Code § 23-2-6 (2003)[9] because he—Mr. Starer—was also employed by Panthera Training when Mr. Gust was injured.[10]  The court granted Mr. Starer's motion, finding that "Mr. Starer brought the [F]uses to the [Hardy County facility] specifically for use in the explosive devices that were necessary tools in the earthquake concussion protocol training offered by Panthera."  The court went on:  "[i]n short, the [c]ourt can discern no alternative, practical or logical reason for Mr. Starer's (the manager's) actions regarding the [Fuses] other than acting in furtherance of Panthera's business . . . ."  The court also found that

---

affidavit of Mr. Starer.  The Gusts filed their amended complaint in June 2021, and Historic Arms renewed its motion to dismiss.  In large part, the motion to dismiss the amended complaint was premised on the Gusts' alleged failure to support their response to Historic Arms's initial motion with affidavits or other evidence.  Neither Historic Arms's original motion to dismiss nor the Gusts' response is included in the appendix record.

[7] Mr. Starer made these statements in a September 2020 affidavit offered in support of Historic Arms's motion to dismiss the Gusts' original complaint.  That affidavit is not attached to Historic Arms's motion to dismiss the Gusts' amended complaint, although pertinent portions are reproduced in the memorandum accompanying the second motion to dismiss.  Mr. Starer supported his motion for summary judgment with an additional affidavit, dated July 30, 2021.

[8] This response was not included in the appendix filed with Historic Arms's petition.  The Gusts moved to supplement that appendix to include various material, including their supplemental opposition to Historic Arms's motion to dismiss and Mr. Starer's motion for summary judgment.  On September 23, 2022, the Court denied the Gusts' motion as moot, *see* W. Va. R. App. Pro. 16, and ordered the supplemental appendix filed.

[9] W. Va. Code § 23-2-6 (2022) (stating, in pertinent part, that "[a]ny employer subject to this chapter who procures and continuously maintains workers' compensation insurance as required by this chapter or who elects to make direct payments of compensation as provided in this section is not liable to respond in damages at common law or by statute for the injury or death of any employee. . . .").

[10] *See* W. Va. Code § 23-2-6a (1949) ("The immunity from liability set out in the preceding section [§ 23-2-6] shall extend to every officer, manager, agent, representative or employee of such employer when he is acting in furtherance of the employer's business and does not inflict an injury with deliberate intention.").  The Gusts did not allege a "deliberate intent" claim.  *See* W. Va. Code § 23-4-2(d)(2) (2015).

3

"[c]learly, Defendant Starer may have been wearing more than one hat during the time in question" as he "was not only the manager of Panthera . . . but also Historic Arms' [sic] Vice President."

In December 2021, the circuit court denied Historic Arms's motion to dismiss the amended complaint for lack of personal jurisdiction. The court found that its exercise of jurisdiction over Historic Arms, as the supplier[11] of the Fuses, was proper under this State's long-arm statutes. Federal due process requirements were also satisfied by Historic Arms's contact with this State. The court also found that Mr. Gust's injuries arose from Historic Arms's contact with West Virginia, and that traditional notions of fair play and justice were not offended by requiring Historic Arms to defend itself in a West Virginia court.

Later, Historic Arms moved the circuit court to amend its earlier order denying its motion to dismiss.[12] Historic Arms contended that the circuit court had erred when it found that Historic Arms's contacts with West Virginia satisfied federal due process. According to Historic Arms, the court's earlier findings in its order granting summary judgment to Mr. Starer necessarily estopped the court from later finding that Historic Arms supplied the Fuses. Specifically, Historic Arms contended that "[t]he adjudicated false allegation that Starer was acting as an agent for Historic Arms when he brought the Fuse[s] into West Virginia . . . is precluded and barred by West Virginia's Doctrine of Issue Preclusion."[13] The Gusts responded with an additional affidavit from Mr. Gust and Mr. White's deposition testimony to the effect that Historic Arms had supplied the Fuses to Panthera Training.

The court denied Historic Arms's latest motion in February 2022. The court reasoned that the Gusts had alleged that Historic Arms had possessed, supplied, and distributed the Fuses before they entered this State—acts distinct from the transport of the Fuses into West Virginia. The court further found that Historic Arms had placed the Fuses in the stream of commerce, so that it had established minimum contacts with West Virginia by distributing them to Mr. Starer who then brought them to West Virginia.

Historic Arms now petitions this Court for a writ prohibiting the circuit court from enforcing its order denying Historic Arms's motion to dismiss for lack of personal jurisdiction.

---

[11] The court noted that it had "not address[ed] the matter of what entity was the owner, and therefore the supplier of the defective fuses or component parts" in the order granting summary judgment to Mr. Starer.

[12] Historic Arms brought this motion under West Virginia Rule of Civil Procedure 59(e). This rule provides that "[a]ny motion to alter or amend the judgment shall be filed not later than ten days after entry of the judgment." Plainly, the circuit court's order denying Historic Arms's motion to dismiss the amended complaint is not a final judgment, so Rule 59(e) was inapplicable in those circumstances. The Gusts did not raise this issue in their response to Historic Arms's motion.

[13] Issue preclusion" is another name for "collateral estoppel." *See Holloman v. Nationwide Mut. Ins. Co.*, 217 W. Va. 269, 277, 617 S.E.2d 816, 824 (2005) (Starcher, J., concurring) (stating that the doctrine of collateral estoppel is also called the doctrine of issue preclusion).

4

## II. Writ Standard

"A writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers. *W. Va. Code* 53-1-1."[14] "When a court is attempting to proceed in a cause without jurisdiction, prohibition will issue as a matter of right regardless of the existence of other remedies."[15] Stated otherwise, "[w]here a court lacks jurisdiction over a nonresident defendant, prohibition is the appropriate remedy to prevent further prosecution of the suit."[16] Despite this, "relief in prohibition is inappropriate where jurisdiction turns on contested issues of fact."[17]

## III. Analysis

The personal jurisdiction inquiry usually requires a two-step analysis: (1) have the defendant's actions satisfied this State's long-arm statutes, and, if so, (2) do the defendant's contacts with West Virginia satisfy federal due process?[18] But Historic Arms does not challenge the circuit court's finding that this State's long-arm statutes are satisfied in this case, so our analysis is limited to the question of federal due process.[19]

As the Supreme Court of the United States has explained, "[t]he Fourteenth Amendment's Due Process Clause limits a state court's power to exercise jurisdiction over a defendant."[20] It "sets the outer boundaries of a state court's authority to proceed against a defendant because the assertion of jurisdiction subjects defendants to the state's coercive power."[21] Due process requirements are satisfied, and a nonresident defendant is subject to the forum state's jurisdiction, if the nonresident defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."[22] A nonresident defendant is subject to the general jurisdiction of the forum state if its contacts with

---

[14] Syl. Pt. 2, *State ex rel. Peacher v. Sencindiver*, 160 W. Va. 314, 233 S.E.2d 425 (1977).

[15] Syl., *Jennings v. McDougle*, 83 W. Va. 186, 98 S.E. 162 (1919).

[16] *Pries v. Watt*, 186 W. Va. 49, 53, 410 S.E.2d 285, 289 (1991).

[17] *State ex rel. Ford Motor Co. v. McGraw*, 237 W. Va. 573, 580, 788 S.E.2d 319, 326 (2016).

[18] *See* Syl. Pt. 3, *id.*

[19] *See* W. Va. Code §§ 56-3-33(a)(2) (2020), 31D-15-1501(d)(3) (2008).

[20] *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021).

[21] *State ex rel. Ford Motor Co.*, 237 W. Va. at 582, 788 S.E.2d at 328.

[22] *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (internal quotation omitted).

5

that state are "so substantial, continuous, and systematic as to render [it] essentially at home" there.[23]

On the other hand, if the nonresident's contacts with the forum state are not substantial enough to grant the forum state general jurisdiction over him, the question becomes whether the forum state can exercise specific jurisdiction. A court may do that if the claims against the nonresident "aris[e] out of or relat[e] to the [nonresident] defendant's contacts or activities in the state by which the defendant purposefully avails itself of conducting activities in the state so long as the exercise of jurisdiction is constitutionally fair and reasonable."[24] To weigh in favor of the exercise of specific jurisdiction, the nonresident defendant's contacts

> must be the defendant's own choice and not "random, isolated, or fortuitous." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984). They must show that the defendant deliberately "reached out beyond" its home—by, for example, "exploi[ting] a market" in the forum State or entering a contractual relationship centered there. *Walden v. Fiore*, 571 U.S. 277, 285, 134 S.Ct. 1115, 188 L.Ed.2d 12 (2014) (internal quotation marks and alterations omitted).[25]

"Two general methods for assessing minimum contacts for purposes of specific personal jurisdiction are stream of commerce and stream of commerce plus."[26] This Court employs the "stream of commerce" method, rather than the "stream of commerce plus" method. Specifically, we have held that

> [p]ersonal jurisdiction "premised on the placement of a product into the stream of commerce is consistent with the Due Process Clause" and can be exercised without the need to show additional conduct by the defendant aimed at the forum state. *Asahi Metal Industry Co. v. Superior Court of California,* 480 U.S. 102, 117, 107 S.Ct. 1026, 1034, 94 L.Ed.2d 92 (1987).[27]

---

[23] Syl. Pt. 5, in part, *State ex rel. Ford Motor Co.*, 237 W. Va. at 573, 788 S.E.2d at 319.

[24] Syl. Pt. 8, in part, *id*.

[25] *Ford Motor Co.*, 141 S. Ct. at 1025.

[26] *State ex rel. Ford Motor Co.*, 237 W. Va. at 589, 788 S.E.2d at 335.

[27] Syl. Pt. 2, *Hill by Hill v. Showa Denko, K.K.*, 188 W. Va. 654, 425 S.E.2d 609 (1992); *see also State ex rel. Ford Motor Co.*, 237 W. Va. at 594, 788 S.E.2d at 340 (stating that "[f]ollowing *Asahi,* this Court adopted Justice Brennan's *World–Wide Volkswagen* approach to stream of commerce as a method of establishing purposeful availment"). Contrary to Historic Arms's argument, this Court did not discard the *Hill* "stream of commerce" approach in *Griffith v. ConAgra Brands, Inc.*, 229 W. Va. 190, 728 S.E.2d 74 (2012). *See State ex rel. Ford Motor*

With that substantive foundation laid, we next outline the mechanics of a motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction. As we have held:

> "When a defendant files a motion to dismiss for lack of personal jurisdiction under *W. Va. R. Civ. P.* 12(b)(2), the circuit court may rule on the motion upon the pleadings, affidavits and other documentary evidence or the court may permit discovery to aid in its decision. At this stage, the party asserting jurisdiction need only make a *prima facie* showing of personal jurisdiction in order to survive the motion to dismiss. In determining whether a party has made a *prima facie* showing of personal jurisdiction, the court must view the allegations in the light most favorable to such party, drawing all inferences in favor of jurisdiction. If, however, the court conducts a pretrial evidentiary hearing on the motion, or if the personal jurisdiction issue is litigated at trial, the party asserting jurisdiction must prove jurisdiction by a preponderance of the evidence."[28]

When a nonresident defendant supports his Rule 12(b)(2) motion with "affidavits or depositions,"—like Historic Arms did here—the proponent of jurisdiction "may not stand on its pleadings but must come forward with affidavits or other proper evidence detailing specific facts demonstrating that the court has jurisdiction over the defendant."[29]

Historic Arms presents two arguments in opposition to the circuit court's conclusion that the Gusts have made a *prima facie* showing of personal jurisdiction. First, Historic Arms contends that the circuit court is collaterally estopped from finding that its contact with West Virginia (if any) satisfies federal due process standards because the court had already found that Mr. Starer transported the Fuses into the West Virginia in his capacity as manager of Panthera Training. Second, Historic Arms contends that even if it did supply the Fuses to Panthera Training in West Virginia it did so only once, and one contact is not enough to permit a West Virginia court to exercise specific jurisdiction over it.

We resolve Historic Arms's first argument—that the circuit court is collaterally estopped from finding that it brought, provided, distributed, or supplied the Fuses to Panthera Training in

---

*Co.*, 237 W. Va. at 595, 788 S.E.2d at 341 (petitioner's argument that in *Griffith*, this Court "rejected the *Hill* stream of commerce approach" was "a misreading of the facts, analysis and holding of" *Griffith*).

[28] Syl. Pt. 6, *State ex rel. Ford Motor Co.*, 237 W. Va. at 573, 788 S.E.2d at 319 (quoting Syl. Pt. 4, *State ex rel. Bell Atlantic-West Virginia, Inc. v. Ranson*, 201 W. Va. 402, 497 S.E.2d 755 (1997)).

[29] *State ex rel. Bell Atl.-W. Va., Inc.*, 201 W. Va. at 415, 497 S.E.2d at 768 (internal quotation and alteration omitted). Neither party maintains that the circuit court conducted an evidentiary hearing on Historic Arms's motion to dismiss.

7

West Virginia—summarily.[30] "The application of the doctrine of collateral estoppel is discretionary with the trial court and rests upon a number of factual predicates, therefore, a writ of prohibition will not issue on the basis that the trial court abused its discretion in failing to enforce collateral estoppe[l]."[31]

Even if that were not the case, the Gusts are correct that the findings underlying the grant of summary judgment to Mr. Starer, individually, are not determinative of the question of whether he *also* acted as agent of Historic Arms at some point in the journey of the Fuses to the Hardy County training facility. Historic Arms focuses on the circuit court's finding that it could "discern no alternative, practical or logical reasons for Mr. Starer's (the manager's) actions regarding the fuse assemblies other than acting in furtherance of Panthera's business," and that "no genuine issue of material fact exists that Defendant Starer was acting as manager of Panthera during the time in question." But the circuit court qualified those findings and expressly recognized that "Defendant Starer may have been wearing more than one hat during the time in question. Specifically, he was not only the manager of Panthera . . . but also Historic Arms' [sic] Vice President." Further, in its order denying Historic Arms's motion to dismiss, the court noted the outer limits of its earlier findings: that is, that it had "not address[ed] the matter of what entity *was the owner*, and therefore the *supplier* of the defective fuses or component parts." That distinction begs factual questions that this Court will not resolve by way of a petition for extraordinary relief.

Historic Arms next takes issue with the circuit court's conclusion that it may exercise specific jurisdiction over Historic Arms because it made sufficient contact with this State so that federal due process is not offended by haling the company into court here.[32] The circuit concluded that, "[a]t a minimum," the amended complaint includes allegations that "Historic Arms placed the component parts into the stream of commerce by distributing them to Mr. Starer," so that

> jurisdiction over Historic Arms is proper even if Historic Arms were [sic] correct in its conclusion that Mr. Starer acted solely in his capacity as manager of Panthera during the transport of the component parts, as knowing and intentional distribution of a

---

[30] *See* Syl. Pt. 1, *State v. Miller,* 194 W. Va. 3, 459 S.E.2d 114 (1995) ("Collateral estoppel will bar a claim if four conditions are met: (1) The issue previously decided is identical to the one presented in the action in question; (2) there is a final adjudication on the merits of the prior action; (3) the party against whom the doctrine is invoked was a party or in privity with a party to a prior action; and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.").

[31] Syl. Pt. 7, *Conley v. Spillers,* 171 W. Va. 584, 301 S.E.2d 216 (1983).

[32] Historic Arms only challenges the circuit court's conclusion that it has minimum contacts to West Virginia for purposes of specific personal jurisdiction. It does not challenge the circuit court's findings that the Gusts' injuries "arise[e] out of or relat[e] to [its] contacts or activities in the state" and that "the exercise of jurisdiction is constitutionally fair and reasonable." Syl. Pt. 8, in part, *State ex rel. Ford Motor Co.*, 237 W. Va. at 573, 788 S.E.2d at 319.

8

product into West Virginia constitutes conduct in the State of West Virginia for personal jurisdiction purposes.

Historic Arms contends that even if it did distribute the Fuses to Panthera Training, that was an "isolated occurrence," not a contact sufficient to allow the circuit court to exercise personal jurisdiction over it. The Gusts respond that this is not a traditional stream of commerce case because Historic Arms purposefully and intentionally sent the Fuses to West Virginia via Panthera Training, rather than merely placing them in the stream of commerce. But even if this is a stream of commerce case, the Gusts argue, the circuit court correctly applied that doctrine.

Setting aside the parties' dispute as to whether this is a stream of commerce case, we see no error in the circuit court's conclusion that the Gusts have made a *prima facie* showing of personal jurisdiction over Historic Arms at this stage of the litigation. As noted by the circuit court, the question of Historic Arms's role as the owner, and so supplier or distributor of the Fuses to Panthera Training, remains open. Mr. White, a former executive with Historic Arms, testified repeatedly that the Fuses had been stored at Historic Arms's place of business in Cape Charles, Virginia, before they were brought to West Virginia. Mr. Gust states the same in his affidavit. In fact, Mr. White testified that Mr. Starer told him that the Fuses were being stored at Historic Arms. Further, according to Mr. White, the Fuses were brought into West Virginia for the specific purpose of assembling flash bang explosives, which Panthera needed—but could not obtain, otherwise—to fulfill its obligations under the DEA contract.

"'[W]hether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws.'"[33] That due process inquiry is neither "mechanical" nor, and important to this case, "quantitative."[34] Mr. White's testimony raises the inference that, at the very least, Historic Arms stored the Fuses for Panthera Training to enable Panthera Training (its wholly owned subsidiary) to meet its obligations under the DEA contract even though, as Mr. Starer has attested, Historic Arms did not deal in explosives. In turn, that inference supports the conclusion that, even if Historic Arms's sole act was to store the Fuses before they were transported to West Virginia, Historic Arms stored them knowing that they would come to West Virginia and then be assembled into explosive devices in West Virginia which would then be detonated, here—all to enable Panthera Training to train DEA employees at the Hardy County facility. We recently observed that when it comes to determining whether a nonresident has sufficient contact to the forum state, "[t]he proper question is not where the plaintiff experienced a particular injury or effect *but whether the defendant's conduct connects him to the forum in a meaningful way.*"[35] Making all inferences in favor of the Gusts, we conclude that they

---

[33] *Id*. at 584, 788 S.E.2d at 330 (quoting *Int'l Shoe*, 326 U.S. at 318).

[34] *Id.*

[35] *State ex rel. Third-Party Defendant Health Plans v. Nines*, 244 W. Va. 184, 196, 852 S.E.2d 251, 263 (2020) (emphasis in original) (quoting *Walden v. Fiore*, 571 U.S. 277, 290 (2014)).

9

have offered sufficient evidence to demonstrate that Historic Arms's conduct is connected to this State in a meaningful way, at this point in the proceedings.

We are not convinced by Historic Arms's argument that the number of its contacts to West Virginia is all that this Court may consider when determining whether the Gusts have made a *prima facie* case of jurisdiction—as we stated above, the due process inquiry is neither "mechanical" nor "quantitative."[36] Any conflict between Mr. Starer's affidavits, Mr. White's testimony, and statements in Mr. Gust's affidavits only underscores that Historic Arms is not entitled to extraordinary relief for the straightforward reason that "relief in prohibition is inappropriate where jurisdiction turns on contested issues of fact."[37] For those reasons, we decline to grant extraordinary relief to Historic Arms.[38]

Writ denied.

ISSUED: October 26, 2022

CONCURRED IN BY:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice C. Haley Bunn

---

[36] *State ex rel. Ford Motor Co.*, 237 W. Va. at 573, 788 S.E.2d at 319.

[37] *Id*. at 580, 788 S.E.2d at 326.

[38] Historic Arms also argues that the Gusts did not properly support their response to its initial motion to dismiss with "affidavits or other proper evidence detailing specific facts demonstrating that the court has jurisdiction over the defendant." *State ex rel. Bell Atl.-W. Virginia, Inc.*, 201 W. Va. at 415, 497 S.E.2d at 768 (quotation and alteration omitted). Historic Arms overlooks that the Gusts offered several exhibits to support their response to Historic Arms's motion to dismiss the amended complaint. So, we find Historic Arms's argument on this point to be moot in view of the procedural history of this case.